**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re**: | § | |
| | § | |
| **ROOTED ENTERPRISE, LLC** | § | |
| | § | **Case No. (26-33356-11)** |
| **Debtor.** | § | |

**MOTION (I) FOR INTERIM AUTHORITY TO USE CASH UNDER 11 U.S.C. §363 AND §105 AND** **(II) REQUEST FOR A FINAL HEARING**

**NOTICE PURSUANT TO LOCAL RULE 9013-1**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON TUESDAY, JUNE 30, 2025, AT 11:00 AM BEFORE HONORABLE JUDGE JEFFREY P. NORMAN IN COURTROOM 403, 4TH FLOOR, 515 RUSK, HOUSTON, TEXAS 77002 PARTIES ARE AUTHORIZED TO APPEAR IN PERSON OR VIRTUALLY BY VIDEO AND TELEPHONE. PARTIES SHOULD CONSULT THE COURT'S WEBSITE FOR INSTRUCTION ON APPEARING IN COURT.**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY**

TO THE HONORABLE JEFFREY P. NORMAN:

Comes now, Rooted Enterprise, LLC ("**Rooted**" or "**Debtor**"), debtor and debtor in possession, files this *Motion (I) for Order Granting Interim Authority to Use Cash Collateral Under 11 U.S.C. §363 and §105 and (II) Request for a Final Hearing* (the "**Motion**")

and in support thereof, respectfully states as follows:

## Summary

1. Debtor filed a Chapter 11 case on May 11, 2026.

2. Debtor hereby seeks authorization to use cash collateral on an interim basis. Without such relief, Debtor will suffer immediate and irreparable harm because Debtor would be required to cease operations immediately, and Debtor's ability to reorganize would be eliminated. Upon approval of this Motion, the secured lender with a valid, perfected lien will be given replacement liens on post-petition receivables for use of its cash collateral, to the extent of diminution of its collateral, in accordance with the proposed budget attached hereto as **Exhibit "A."**

3. Debtor anticipates obtaining consent of the secured lender to the relief requested herein. A proposed interim Order is filed contemporaneously with this motion.

## I. Jurisdiction and Venue

4. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(D).

5. Venue of the Debtor's Chapter 11 case is proper in this district pursuant to 28 U.S.C. §§ 1409.

## II. Background Information

6. On May 11, 2026 (the "**Petition Date**"), Rooted commenced a bankruptcy case by filing a petition for relief under Chapter 11 of the Bankruptcy Code under Case No. 26-33356 ("**Bankruptcy Case**").

7. The Debtor continues to manage its respective property as debtor and debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

8. To date, no creditors' committee has been appointed in this case. No trustee or examiner has been appointed.

9. Rooted is a Texas limited liability company, formed June 16, 2021. Rooted was formed to for the sole purpose of acquiring and owning this 12,359 sqft commercial building located at 2775 Barron Road, College Station, TX 77845, Brazos County, Texas ("**Rooted Property**"). The Rooted Property is equally co-owned by Stephanie Shoemake and Steve Shoemake. As discussed more fully below, Prosperity Bank retains a first lien mortgage on the Rooted Property and the SBA retains a second lien.

10. Rooted leases the Rooted Property to BCS Peas in a Pod Learning Center, LLC ("**PIAP**"). PIAP is solely owned by Stephanie Shoemake, one of Rooted's co-owners. After acquiring the property, Debtor completed the renovations and improvements necessary to convert the building into a daycare.

11. Rooted's lease with PIAP is a triple net lease, requiring the tenant to pay base monthly rent of $22,000, plus payment of taxes, insurance and common area maintenance. These payments were based on amounts required to pay debt service, plus taxes, insurance and common area maintenance. Aggregate monthly rental payments averaged $12,590[1] over the past year[2].

12. Prior to leasing the Rooted Property, PIAP operated at another location and maintained an average census between 55-65 students. The move to the Rooted Property would allow PIAP to increase its enrollment. However, it soon became apparent that PIAP was unable to increase its census quickly enough to afford the full rental payment to Rooted. PIAP has not

[1] Prior to the Petition Date, PIAP remitted debt service, insurance and taxes directly to the payee.
[2] Debtor received a monthly average of $30,216.59 between the months of May 2025 – September 2025.

remitted payments to Rooted since October 2026, thereby causing Rooted to default in payments to the prepetition lenders[3].

13. Prosperity Bank initiated litigations against Rooted, PIAP, and the Shoemake's and scheduled the Rooted Property for foreclosure in June, thereby prompting the filing of the Bankruptcy Case. The Debtor intends to utilize this Bankruptcy Case to work with PIAP to modify its lease to become current and allow rental payments to commence, and also market the Rooted Property for sale.

## III. FINANCING HISTORY

### A. Parties Asserting Secured Liens Against Cash Collateral of ROOTED ENTERPRISE, LLC[4]

#### i. UCC Filings

14. A search of the Secretary of State records for UCC-1 was conducted on May 12, 2026 and the below parties filed a UCC-1. A copy of search results is attached as **Exhibit "1"**.

15. On September 12, 2022, Prosperity Bank filed UCC-1 filing number 220045609290 against both Rooted and PIAP for the Rooted Property, all personal property, as well as other assets. This UCC-1 statement is attached as **Exhibit "B"**.

16. On September 12, 2022, Prosperity Bank filed a second UCC-1 filing number 22045609311 against both Rooted and PIAP. This UCC-1 statement was terminated on March 20, 2025 under filing number 2500112292.

17. On October 21, 2024, U.S. Small Business Administration filed UCC-1 filing number 24-0056924789 against both Rooted and PIAP for "all equipment, fixtures (including any

---

[3] PIAP is a co-borrower on the Prosperity and SBA loans. The Shoemake's are guarantors on the Prosperity Loan, and Ms.Shoemake is a guarantor on the SBA Loan.

[4] The lienholders listed in this motion have filed UCC-1 statements in the Texas Secretary of State records asserting liens. By including the same herein, Rooted does not waive its right to dispute any lien asserted by any alleged lienholder.

proceeds and products) whether now owned or later acquired, wherever located". This UCC-1 statement is attached as **Exhibit "C"**.

### ii. Prosperity Loan

18. On or about September 7, 2022, Rooted and PIAP entered into a Promissory Note with Prosperity Bank whereby this lender provided a loan in the amount of $1,761,000.00 ("**Prosperity Loan**"), evidenced and secured by a Promissory Note, a Deed of Trust, Security Agreement and Assignment of Rents and Leases, and related loan documents (collectively "**Prosperity Loan Agreement**"). Rooted and PIAP subsequently entered into a Modification, Renewal, and Extension Agreement on April 7, 2023 with Prosperity Bank in the modified amount of $2,073,000.00 (the "**Prosperity Modified Agreement**"). The Prosperity Loan, secured by liens on the assets of Rooted, including liens on Rooted Property, along with rents generated from the same[5].

19. Upon information and belief, the Prosperity Modified Agreement accrues interest at a fixed rate of 7.75% for the first 60 months, and then a variable rate, adjusting daily, set at the lesser of the Maximum Rate (per Texas Finance Code) or the Base Rate + 0.50%. The term of the loan matures October 7, 2044. Pursuant to the Prosperity Modified Agreement, interest-only payments were due for the first eighteen (18) months from the modification effective date of April 7, 2023, with monthly interest payments of approximately $13,388.00. Beginning with the nineteenth (19th) month, and continuing through maturity, monthly payments of principal and accrued interest in the amount of approximately $17,018.00 are due and payable. As of the Petition Date, the entire principal balance of the Prosperity Modified Agreement remained outstanding,

[5] Exhibit "B". By including Prosperity herein, Rooted does not waive its right to dispute any lien asserted by any alleged lienholder.

together with certain accrued and unpaid interest from October 2025 through May 2026, and any accrued late charges.

**iii. SBA Loan**

20. On or about January 23, 2025, Rooted and PIAP (as co-borrowers) entered into an SBA 504 loan with the United States Small Business Administration ("**SBA**") in the original principal amount of $1,668,000.00 (the "**SBA Loan**"), evidenced and secured by a promissory note, deed of trust, and related loan documents (collectively, the "**SBA Loan Documents**"). The SBA Loan is secured by a lien on the Rooted Property located at 2775 Barron Road, College Station, Texas 77845, which lien is junior and subordinate to the lien of Prosperity Bank.[6]

21. The SBA Loan is a 25-year term loan at a fixed interest rate of 5.02251% per annum, with an escrow requirement of $9,757.91 per month. Estimated monthly payments under the SBA Loan are as follows: years 1–5, approximately $11,109.69; years 6–10, approximately $10,953.91; years 11–15, approximately $10,756.44; years 16–20, approximately $10,502.72; and years 21–25, approximately $10,176.74. As of the Petition Date, the SBA Loan was past due and in default.

## III. BASIS FOR REQUESTED RELIEF

### A. Cash Collateral and Authority to Use

22. Debtor hereby seeks authority to use the cash Collateral in connection with this bankruptcy case to preserve the value of Debtor's business. A proposed 30-day budget is attached hereto as Exhibit "A" ("**Interim Budget**"). Although the secured lender for the Debtor has not yet agreed to the use of cash collateral or the proposed interim budgets, Debtor expects that an agreement will be reached.

---

[6] Exhibit "C". By including the SBA herein, Rooted does not waive its right to dispute any lien asserted by any alleged lienholder.

23. Pursuant to the Bankruptcy Code, Debtor is required to provide adequate protection to the secured lenders with respect to use of cash collateral. While the terms of an agreed order have not been finalized, Debtor expects that an agreed order will include, among others, the following:

> A. Debtor may use cash Collateral pursuant to an approved budget, with a 10% variance per line item, on a rolling basis, and the ability to apply any un-used budgeted funds at its discretion.
>
> B. Prepetition liens of secured lenders will be adequately protected by replacement liens to the same extent and priority as its prepetition liens to the extent that cash collateral is used.

24. The only viable source of funding for post-petition operations is cash collateral made available to Debtor.

25. Without the use of cash collateral on an interim basis, Debtor would suffer immediate and irreparable harm pending a final hearing on the Motion.

26. The importance in cases like these of access to cash was recognized in *In re George Ruggieri Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir. 1984). The court in that case noted: "A debtor, attempting to reorganize in business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild." *Id.* at 1019.

27. Debtor anticipates that valid secured lenders will consent to the proposed use of cash Collateral, subject to receiving replacement liens and perhaps other protections as provided in an agreed order. However, to the extent consent is not obtained, the Court may authorize the use of cash collateral by Debtor provided that the Court determines that any objecting entity's interest is adequately protected. 11 U.S.C. § 363(c)(2)(B) and (e).

28. Section 361 sets forth three non-exclusive examples of what may constitute adequate protection, which includes, but not limited to, providing the secured creditor with

“additional or replacement liens” and other relief that provides the secured creditor with the “indubitable equivalent” of the secured creditor’s interest in the cash collateral. Legislative history indicates that Congress intended to provide courts with flexibility to grant relief on a case-by-case basis.

29. Pursuant to the Motion, Debtor proposes to grant secured lenders replacement liens on post-petition accounts receivable, a recognized method for providing adequate protection as specified under sections 361 and 363.

30. In exchange for the use of cash collateral, as adequate protection for the use of the cash Collateral, but only to the extent of the actual diminution in value of the pre-petition collateral, Debtor proposes to grant to secured lenders replacement liens in the form of security interests and liens upon the same types and kinds of assets upon which the lender held a prepetition lien, subject only to valid, perfected, and enforceable prepetition liens (if any) which are senior as of the Petition Date, as well as an additional lien upon the Debtor’s post-petition accounts and accounts receivables. The grant of replacement liens will only apply to the extent that the pre-petition collateral was encumbered by valid and perfected liens and security interests (collectively, the "**Replacement Liens**"). The Replacement Liens will not attach to any avoidance actions under Chapter 5 of the Bankruptcy Code.

31. Without access to cash collateral, the value of the Debtor’s assets will plummet. From that standpoint, the overall collateral position of the secured lenders will deteriorate markedly, more than offsetting any erosion of the cash collateral.

32. Bankruptcy Rule 4001(c)(2) states that 14 days’ notice must be given before final approval of such cash Collateral use is given. With this Motion, Debtor is providing secured lenders with 14 days’ notice between the time of the filing of this Motion and request that the

Court set a final hearing on this matter upon expiration of the 14-day notice period, or as soon thereafter as is practical. Debtor will suffer irreparable harm if the Motion is not immediately considered as it does not have the funds to continue operations. There is little harm to general unsecured creditors under this agreement since the secured lender already has liens on Debtor's accounts, chattel paper, deposit accounts, letter of credit rights, general intangibles and inventory, including accounts receivable and cash.

33. Debtor's request that this Court enter the preliminary order attached hereto; set a final hearing on this Motion pursuant to Bankruptcy Rule 4001 if objections are filed, and at such hearing, authorize Debtor to continue using its cash Collateral for the remainder of this Chapter 11 case.

## IV. Conclusion

WHEREFORE, Debtor respectfully requests that the Bankruptcy Court:

1) Enter a preliminary order authorizing the use of cash collateral pursuant to the proposed budget for 30 days;

2) Set a final hearing on this Motion after expiration of thirty (30) days' notice period required by Bankruptcy Rule 4001, or as soon thereafter as practical, if objections are filed;

3) At such final hearing, granting Debtor the authority to continue the use of cash collateral until a plan is confirmed in this case or the case is dismissed, whichever happens earlier; and

4) Granting all such other and further relief as is just and proper.

DATED: June 1, 2026

Respectfully submitted,

**HASELDEN FARROW PLLC**
By: /s/ Elyse M. Farrow
Elyse M. Farrow
State Bar No. 24062719
708 Main Street, 10th Floor
Houston, Texas 77002

Telephone: (832) 819-1149
Facsimile: (866) 405-6038
efarrow@haseldenfarrow.com
*Proposed Attorneys for Debtor and Debtor in Possession*
*Rooted Enterprise, LLC*

**OF COUNSEL:**
**HASELDEN FARROW PLLC**
MELISSA A. HASELDEN
State Bar No. 00794778
708 Main Street
10th Floor
Houston, Texas 77002
Telephone: (832) 819-1149
Facsimile: (866) 405-6038
mhaselden@haseldenfarrow.com
*Proposed Attorneys for Debtor and Debtor in Possession*
*Rooted Enterprise, LLC*

**CERTIFICATE OF SERVICE**

I certify that on June 1, 2026 a copy of the Debtor's MOTION (I) FOR INTERIM AUTHORITY TO USE CASH UNDER 11 U.S.C. §363 AND §105 AND (II) REQUEST FOR A FINAL HEARING was served on the parties seeking service through the Court's BK/ECF filing system. A separate declaration evidencing service on all other parties in interest by First Class US Mail, post prepaid, will be filed.

*/s/ Elyse M. Farrow*
Elyse M. Farrow

**EXHIBIT "A"**

***ROOTED ENTERPRISE, LLC***
**PROPOSED 30-DAY BUDGET**