**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **ROOTED ENTERPRISE, LLC** | § | |
| | § | Case No. 26-33356-11 |
| Debtor. | § | |
| | § | |
| | § | |

**DEBTOR'S MOTION FOR ORDER APPROVING AUTHORITY TO ENTER INTO PREMIUM FINANCE AGREEMENT WITH ETI FINANCIAL CORPORATION AND REQUEST FOR EXPEDITED CONSIDERATION**

**NOTICE PURSUANT TO LOCAL RULE 9013-1**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

**** BY SEPARATE MOTION FILED CONTEMPORANEOUSLY HEREWITH, DEBTOR SEEKS EXPEDITED RELIEF ON THIS MOTION NO LATER THAN JULY 6, 2026. IF EXPEDITED CONSIDERATION IS GRANTED, YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EXPEDITED CONSIDERATION IS NOT WARRANTED; YOU SHOULD FILE AN IMMEDIATE RESPONSE OR APPEAR AT THE SCHEDULED HEARING. ****

TO THE HONORABLE JEFFREY P. NORMAN,
UNITED STATES BANKRUPTCY JUDGE:

Rooted Enterprise, LLC (**"Rooted"** or **"Debtor"**), debtor and debtor in possession in the above-captioned Chapter 11 case, files this Debtor's Expedited Motion for Order Approving

Authority to Enter Into Premium Finance Agreement with ETI Financial Corporation (the **"Motion"**) and in support thereof respectfully shows the Court as follows:

## I. REASONS FOR EXPEDITED RELIEF

1. The Debtor's existing commercial property insurance policy, which covers the Debtor's 12,359 square foot commercial building located at 2775 Barron Road, College Station, Texas 77845 (the **"Rooted Property"**), expires on July 8, 2026. Lapse of coverage would constitute a breach of the Debtor's obligations to its secured lenders, Prosperity Bank and the U.S. Small Business Administration, and would place the Rooted Property, the principal asset of this estate, at risk of uninsured loss. The Debtor's lease with its tenant, BCS Peas in a Pod Learning Center, LLC (**"PIAP"**), is a triple-net lease under which PIAP is obligated to pay the insurance costs for the Rooted Property.

2. Because the full premium cannot be paid from available estate funds on a lump-sum basis, the Debtor has arranged to finance the premium through ETI Financial Corporation ("**ETI**"), as further described herein. The down payment and monthly installments are included in the Debtor's cash collateral budget, which is set for hearing on June 30, 2026. The premium financing arrangement constitutes a post-petition borrowing requiring this Court's approval.

3. The Debtor respectfully requests that this Motion be considered on an expedited basis at or July 6, 2026[1], to ensure that the Debtor may renew its insurance coverage without any lapse in protection as of July 8, 2026. The standard 21-day notice period would expire after the policy effective date, causing irreparable harm to the estate. Contemporaneous with this motion, the Debtor shall file a motion seeking the expedited relief requested herein.

---

[1] The Court has scheduled a status conference in this case on July 6, 2026 at 11:00 a.m.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter by virtue of 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (D) and (M). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. BACKGROUND INFORMATION

### A. Overview of the Debtor

5. On May 11, 2026 (the "**Petition Date**"), Rooted Enterprise, LLC commenced this bankruptcy case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, Case No. 26-33356-11 (the "**Bankruptcy Case**"). The Debtor continues to operate and manage its property as debtor and debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No creditors' committee, trustee, or examiner has been appointed in this case.

6. Rooted Enterprise, LLC is a Texas limited liability company formed June 16, 2021, organized for the sole purpose of acquiring and owning the Rooted Property. The Rooted Property is equally co-owned by Stephanie Shoemake and Steve Shoemake. The Debtor leases the Rooted Property to PIAP, a daycare facility, under a triple-net lease. PIAP is solely owned by Stephanie Shoemake, one of Rooted's co-owners. Prosperity Bank holds a first lien mortgage on the Rooted Property and the U.S. Small Business Administration holds a second lien.

### B. The Insurance Requirement

7. The Debtor is required under its loan documents and as a condition of its Chapter 11 reorganization to maintain adequate insurance coverage on the Rooted Property at all times. The current commercial property insurance policy (Policy No. SLSTPTY13341525, Starr Surplus Lines Insurance Company / RT Specialty) expires on July 8, 2026. Continuity of insurance coverage is critical to protect the Rooted Property, which constitutes the principal asset of the

estate, and to satisfy the requirements of the Debtor's secured lenders, Prosperity Bank and the SBA.

8. The Debtor's renewed commercial property insurance policy provides coverage for the period July 8, 2026 through July 8, 2027, with a total premium of $18,900.00 plus taxes, fees, and other charges, for a total financed cost of $21,304.13 (financed basis) or $20,348.66 (if paid in full). The insurance is placed through Vertical Insurance Group LLC DBA Comploy. Rooted's triple-net lease requires PIAP to pay the insurance costs, and the Debtor's cash collateral budget reflects receipt of insurance-related NNN payments from PIAP to cover this cost.

## IV. THE PREMIUM FINANCE AGREEMENT

9. The Debtor has negotiated a Premium Finance Agreement (Contract No. 14614) with ETI Financial Corporation ("**ETI**"), P.O. Box 829522, Pembroke Pines, FL 33082, a copy of which is attached hereto as **Exhibit "A"**. Upon Court approval, the Agreement will be executed and ETI will pay the financed portion of the premium to the insurer on the Debtor's behalf.

10. The material financial terms of the Premium Finance Agreement are as follows:

a. Policy: Commercial Property Insurance, Policy No. SLSTPTY13341525, Starr Surplus Lines Insurance Company / RT Specialty, effective July 8, 2026 through July 8, 2027;
b. Total Premium and Related Fees: $20,348.66;
c. Down Payment Required from Debtor: $6,460.03;
d. Amount Financed: $13,888.63;
e. Total Finance Charge: $955.47;
f. Total of Payments: $14,844.10;
g. Annual Percentage Rate: 14.74%;
h. Payment Schedule: Ten (10) monthly installments of $1,484.41 each, due on the 8th day of each month, commencing August 8, 2026.

11. The down payment of $6,460.03 is included in the Debtor's proposed cash collateral budget, which is scheduled for hearing on June 30, 2026 before this Court. The Debtor's triple-net

lease obligates PIAP to reimburse insurance costs, and the budget reflects corresponding NNN insurance income from PIAP.

12. As collateral to secure repayment of the total amount financed, any late charges, and costs under the Agreement, the Debtor will grant ETI a security interest solely in: (i) the insurance policy financed pursuant to the Agreement; (ii) any money that may become due under the policy because of a loss that reduces unearned premiums (subject to the rights of any applicable mortgagee or loss payee); (iii) any return or unearned premiums under the policy; and (iv) any dividends that may become due to the Debtor under the policy.

13. Pursuant to the Agreement, in the event of default by the Debtor, the Agreement purports to grant ETI an irrevocable limited power of attorney to cancel the financed policy and collect the unearned premiums. The Debtor acknowledges this provision but notes that any such cancellation would remain subject to the automatic stay and applicable bankruptcy law absent further order of this Court.

## V. BASIS FOR RELIEF REQUESTED

14. Section 364(b) of the Bankruptcy Code provides that, after notice and a hearing, a court may authorize a debtor-in-possession to obtain unsecured credit or to incur unsecured debt other than in the ordinary course of business. To the extent the premium financing constitutes post-petition borrowing secured by estate property, § 364(c) of the Bankruptcy Code authorizes such borrowing upon a showing that the debtor cannot otherwise obtain credit. Premium finance agreements, which are secured solely by the financed insurance policies and their associated unearned premiums, not by general estate assets, are regularly approved by courts in this district as a prudent and necessary means of maintaining required insurance coverage during the pendency of a chapter 11 case.

15. The Debtor is unable to obtain unsecured credit to fund the full insurance premium. Given the Debtor's bankruptcy status, the insurer requires either full payment of the premium upfront or premium financing. The Debtor lacks sufficient liquidity to pay the entire premium in a lump sum. Premium financing, with the down payment already included in the proposed cash collateral budget, is the only practicable method available.

16. Without court approval of this financing arrangement, the Debtor will be unable to renew its commercial property insurance, placing the Rooted Property at significant risk of uninsured loss. Lapse of coverage would also constitute a default under the Debtor's obligations to Prosperity Bank and the SBA, and would violate the terms of the cash collateral order, which requires the Debtor to maintain insurance on all estate assets.

17. The terms of the Premium Finance Agreement are commercially reasonable. The 14.74% APR is consistent with market rates for premium financing in the context of a bankruptcy case. The security interest granted to ETI is limited solely to the financed insurance policy and its associated proceeds, and does not encumber any other property of the estate. The proposed financing imposes no material burden on unsecured creditors beyond the finance charge, which is modest relative to the coverage obtained.

18. The Debtor requests that any order approving the premium finance agreement include a provision striking, as inconsistent with the Debtor's status as debtor-in-possession, any representations or warranties in the Agreement providing that the Debtor is not in default, insolvent, or a debtor in a bankruptcy proceeding.

## VI. CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court:

a. Enter an order, on an expedited basis, authorizing and approving the Debtor to enter into the Premium Finance Agreement with ETI Financial Corporation;

b. Authorize the Debtor and ETI to take all actions necessary or appropriate to effectuate the Agreement; and
c. Grant such other and further relief as the Court deems just and proper.

DATED: June 19, 2026

Respectfully submitted,

**HASELDEN FARROW PLLC**

By: /s/ Elyse M. Farrow
Elyse M. Farrow
State Bar No. 24062719
708 Main Street, 10th Floor
Houston, Texas 77002
Telephone: (832) 819-1149
Facsimile: (866) 405-6038
efarrow@haseldenfarrow.com

*Attorneys for Debtor and Debtor in Possession Rooted Enterprise, LLC*

**OF COUNSEL:**

**HASELDEN FARROW PLLC**
MELISSA A. HASELDEN
State Bar No. 00794778
708 Main Street, 10th Floor
Houston, Texas 77002
Telephone: (832) 819-1149
Facsimile: (866) 405-6038
mhaselden@haseldenfarrow.com

*Attorneys for Debtor and Debtor in Possession Rooted Enterprise, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2026, a true and correct copy of the foregoing Debtor's Expedited Motion for Order Approving Authority to Enter Into Premium Finance Agreement with ETI Financial Corporation was served via electronic mail upon all parties registered to receive electronic notice through the Court’s ECF system. A separate declaration of mailing will be filed with respect to service upon parties by First Class United States Mail, postage prepaid.

/s/ Elyse M. Farrow
**Elyse M. Farrow**

## VERIFICATION

The factual statements in paragraphs 1 - 3 are true and correct within my own personal knowledge. I certify under perjury that the foregoing is true and correct.

/s/ Elyse M. Farrow
**Elyse M. Farrow**

# PREMIUM FINANCE AGREEMENT

## SC PREMIUM FINANCE SERVICE COMPANY #101584

## SECURITY AGREEMENT, DISCLOSURE STATEMENT AND LIMITED POWER OF ATTORNEY

ETI FINANCIAL CORPORATION (HEREIN AFTER CALLED "LENDER")
P.O. BOX 829522
PEMBROKE PINES, FL 33082
PHONE TOLL FREE: (800) 995-7001
LOCAL FAX: (954) 510-8044

CHECK APPROPRIATE BOX(S):
☒ COMMERCIAL
☐ PERSONAL
☐ RENEWAL

0
CONTRACT NO.

14614
AGENT NO.

| PRODUCER (insurance Agency/Broker) NAME, ADDRESS and PHONE NUMBER | BORROWER (Insured) NAME, ADDRESS and PHONE NUMBER | ☐ BORROWER in Bankruptcy chapter (circle one): 7 11 13 |
|---|---|---|
| Vertical Insurance Group LLC DBA Comploy<br>330 E Kilbourn Avenue Ste. 850,<br>Milwaukee WI 53202<br>+18332667569 | Rooted Enterprises, LLC<br>2775 Barron Road ,<br>College Station TX 77845<br>+19797031816 | BORROWER SSN/FEIN |

## 1. SCHEDULE OF FINANCED POLICIES

| NAME OF INSURANCE COMPANY AND GENERAL AGENT | TYPE OF POLICY | POLICY NUMBER | EFFECTIVE DATE | POLICY TERM (months) | SUBJECT TO AUDIT? | MIN EARNED (%) | PREMIUM AND RELATED FEE AMOUNTS |
|---|---|---|---|---|---|---|---|
| Starr Surplus Lines Insurance Company<br>RT Specialty | Commercial Property<br>EARNED FEES<br>UNEARNED FEES | | 07/08/26 | 12 | false | 30 | $18,900.00<br>$507.76<br>$940.90 |

## 2. CERTAIN FINANCIAL TERMS

Agency Fee: $0.00

| A | -B | =C | +D | =E : (C + D) | =F : (E + B) | |
|---|---|---|---|---|---|---|
| TOTAL PREMIUMS AND RELATED FEES | DOWN PAYMENT REQUIRED FROM BORROWER | AMOUNT FINANCED Amount of credit provided to you or on your behalf. | TOTAL FINANCE CHARGES Dollar amount the credit will cost you. | TOTAL OF PAYMENTS Amount paid after making all scheduled payments. | SALES PRICE The total price of your credit including your down payment (cash price and finance charge) | ANNUAL PERCENTAGE RATE Cost of your credit as a yearly rate. |
| $20,348.66 | $6,460.03 | $13,888.63 | $955.47 | $14,844.10 | $21,304.13 | 14.74 |

## 3. PAYMENT SCHEDULE

| AMOUNT OF EACH PAYMENT | NUMBER OF PAYMENTS | DAY OF MONTH PAYMENTS ARE DUE | FIRST PAYMENT DUE DATE |
|---|---|---|---|
| $1,484.41 | 10 | 8 | 08/08/26 |

## 4. REQUIRED DISCLOSURES

SECURITY INTEREST: Borrower hereby grants Lender a security interest in all insurance policies listed above and all unearned premiums, return premiums, dividend payments and loss payments thereof.

LATE CHARGE: If a payment is not made by the 5th day past due (1 day in SC) or such later date as required by law, then Borrower will be charged a late charge (SEE SECTION 9 "LATE CHARGES" ON THE ADDITIONAL PROVISIONS PAGE OF THIS AGREEMENT FOR STATE SPECIFIC INFORMATION).

PREPAYMENT: If Borrower pays off early, Borrower will not have to pay a penalty and may be entitled to a refund of part of the finance charge.

CONTRACT REFERENCE: See the rest of this Agreement below, and ADDITIONAL PROVISIONS page, for additional information about nonpayment, default, required prepayment in full before the scheduled date, prepayment refunds and penalties.

**5. PAYMENT PROVISIONS:** Borrower promises to pay to Lender at Lender's address above, or such other place as Lender may designate, the Total of Payments shown above in consecutive monthly payments in the number, amounts, and at the dates disclosed in the above "Payment Schedule" until loan is fully paid. Any payments made by Borrower after default shall be credited to the then outstanding balance due under this Agreement. The Borrower agrees that all payments due hereunder shall be made by the Borrower directly to Lender and payments by the Borrower to any other person, insurance agency, corporation or otherwise shall not constitute payment to the Lender.

NOTICE TO INSURED/BORROWER: 1) READ THIS AGREEMENT BEFORE YOU SIGN 2) DO NOT SIGN THIS AGREEMENT IF IT CONTAINS BLANK SPACES 3) YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT AT THE TIME YOU SIGN 4) KEEP YOUR COPY OF THIS AGREEMENT TO PROTECT YOUR LEGAL RIGHTS 5) UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGES 6) IN SC, AN AGENCY FEE OF UP TO $5.00 MAY BE CHARGED BY THE AGENCY.

When signed below by you, or on your behalf, you (Borrower) acknowledge receipt of a copy of this Agreement and that you agree to the provisions printed above and on the ADDITIONAL PROVISIONS pages of this Agreement and that both the front and any subsequent pages constitute the Agreement between Borrower and Lender. Borrower hereby requests Lender to pay the financed portion of its insurance policy premiums listed above, on its behalf.

Rooted Enterprises, LLC

DATE SIGNATURE OF BORROWER(S) OR DULY AUTHORIZED AGENT OF BORROWER(S) PRINT NAME & TITLE

PRODUCER REPRESENTATION

THE UNDERSIGNED REPRESENTS AND WARRANTS: by signing or submitting this Premium Finance Agreement, the Producer makes the Producer's Representations and Warranties on the ADDITIONAL PROVISIONS page of this Agreement and agrees to be bound to the terms of this Agreement. Producer also agrees and that there has been no assignment of any interest in the insurance policy(ies) except for the assignment to Lender and Lender may assign this Agreement, including Producer's Representations and Warranties under its normal course of business.

Samantha Phillips

SIGNATURE OF PRODUCER (AGENT OR BROKER) PRINT NAME & TITLE

EXHIBIT
A
exhibitsticker.com

# ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT

6. IRREVOCABLE LIMITED POWER OF ATTORNEY: Borrower hereby appoints Lender as their attorney in fact with full power of substitution and authority and upon default to cancel the policies listed on this Agreement with full power to execute the policies and to receive unearned premiums, dividend payments and loss payments which may become payable under said policies. Said insurance companies or their authorized agent are hereby authorized and directed, upon the demand or request of Lender, to cancel said insurance policies and pay to the order of Lender the gross unearned or return premiums thereon pursuant to the security interest contained in paragraph 4 above, without proof of default hereunder or breach thereof, up to the amount owing hereunder. The Borrower hereby authorizes the Lender to endorse his/her name on any check or draft for all monies that may become due from the insuring company and to apply the same as payment of this agreement.

7. NON-REFUNDABLE FEES: Part of the finance charge includes a $20 non-refundable fee except as follows: $10 in AZ, LA, NY, MO, PA; $15 in NC, AL; $12 in NJ; $25 in NV; $16 in MA; $0 in IN; $20 if the loan balance is less than $500, $30 if the loan balance is $500-$999, or $40 if the loan balance is greater than $1000 in IL; $10 if loan balance is greater than $100 in WI; $18 in MI; actual up to $20 in MD; 4% of amount financed in TN; $20 for loan balance up to $1,000, $25 if loan balance over $1,000 in TX.

8. RETURNED PAYMENTS: Borrower shall be charged a fee of $20 in GA, IN ($15 in CA, FL, IL, NV; $10 in MA; $10 or actual charges in AZ; 5% of returned check not to exceed $25 in LA; actual up to $25 in MD; $10 + bank charges in OH) if Borrower's payment is not honored when presented to the bank on which drawn; in such case certified funds are required for subsequent payments. Should a payment be returned as unpaid for any reason, then the notices sent by the Lender prior to the payment being received remain valid and the contract is subject to cancellation on or after the dates indicated in those notices.

9. LATE CHARGES: For installments in default five days or more, (10 days in CA, MA, LA, IN, MI, NJ, TN, TX), Borrower will pay the following late charges: $10 in FL for consumer policies only (or 5% of installment for commercial policies with a minimum of $10.00); $16.50 in IN; $10 in SC; Charge of 5% of installment amount with a minimum of $1 ($1.50 in GA, AL; $2 in TN; $10 in LA); maximums of $10 in AZ (consumer policies only); OH (consumer policies only); $5 in NY, MI, NJ (consumer policies only; a minimum of $25 and a maximum of 1.5% for commercial policies), 5% in MA (consumer policies only); $8 in MD (consumer policies only; $100 maximum for commercial policies); $15 in IL (consumer policies only), MO (consumer policies only).

10. CANCELLATION CHARGE: If a default of the terms in this Agreement by the Borrower results in cancellation of any insurance policy listed in the "Schedule of Financed Policies," the Borrower will pay Lender an amount no greater than the maximum cancellation charge permitted by law. Cancellation charge shall be $5 in TN, AL (consumer policies; $15 for commercial), $5 in GA (consumer policies, $15 commercial); $10 in OH; the lesser of 2% or $5 in MA for consumer policies (greater of 2% or $5 for commercial policies); $15 in AZ, IL, MO; $25 in LA; $5 less late charges in NY, NJ, MI; $15 less late charges in MD (consumer policies only and 5% of installment up to difference between late charges and $100 in MD.) This charge will apply each time a Notice of Cancellation is issued for a policy financed hereunder and applies regardless of whether or not the policy is reinstated.

11. ATTORNEY FEES: Borrower agrees to pay attorney's fees and costs of Lender, to the extent permitted by law, if this agreement is referred to an attorney (not salaried employee) for collection. Attorney fees shall be 20% of outstanding indebtedness in AZ, FL, NY, MO, NV; 15% of outstanding indebtness in TN; 25% of unpaid debt in LA.

12. RIGHT TO PREPAY: Borrower shall have the right to prepay, in whole or in part, the amounts due hereunder at any time without penalty. Upon payment in full Borrower shall receive a refund of the unearned finance charge computed in accordance with the Rule of 78's except in NC, WI, IN, MI, NV, TN and NY, where the refund will be computed using the Sum of Periodic Balances method. In CA, MA, AZ, MO, PA, and NJ, the refund will be computed using the Actuarial method. In SC, the refund will be computed using the Short Rate method. Any finance charge in excess of such amount will be refunded to the Borrower. If refund is less than $1, no refund shall be made (except $5 in SC, IL, MD; $3 in OH, MI; $2 in GA). There is a minimum finance charge of $25 in CA; $39 in IN; $20 in NJ.

13. EVENT OF DEFAULT and CANCELLATION: - A default shall occur if (a) Borrower fails to make any payment when due hereunder, or if Borrower fails to comply with any provision hereunder or (b) if Borrower or any Insurance Company listed in Section 1. becomes the subject of any bankruptcy proceedings; if a receiver is appointed for their property or if there is a transfer of the policies to any third party. Upon default, Lender is authorized to accelerate and declare due and payable the entire unpaid balance of this note, less unearned finance charges and Lender may request cancellation of the insurance policies listed in the Schedule of Financed Policies upon 10 days written notice of intent to cancel (15 days in PA, 14 days in LA, 13 days in IN, NY), provided said default is not cured within such period. However, to the extent required by applicable law, Borrower may be held in default only upon the occurence of clause (a). Clause (b) is not applicable in FL, or NC. Borrower shall remain liable under this agreement until Lender is in receipt of the full amount payable hereunder. Interest will accrue on the unpaid balance until payment in full. Borrower hereby waives presentment, protest and notice of dishonor. No waiver by Lender of any default shall be construed as a waiver for any other or subsequent default and no delay or omission on Lender's part to exercise any right or power arising hereunder will constitute a waiver for any such right or power. The Borrower agrees Lender is not an insurer and assumes no liability as an insurer and agrees that when cancellation by Lender is in accordance with the State laws applicable to this Agreement, Lender is not responsible for any special, incidental or consequential damages incurred by the Borrower resulting from such cancellation, and the Borrower shall be responsible for costs and attorneys fees incurred by Lender in any action filed as a result thereof. The Borrower hereby releases and discharges and agrees to hold harmless Lender and each holder hereof, and their respective officers, directors, agents, employees, representatives, parents, affiliates, subsidiaries, successors and assigns from any liability, claim, cause of action, damages, losses and expenses (including, without limitation, reasonable attorney's fees andcosts at all pre-trial, trial, post-trial, post-judgement and appellate levels) by reason of any cancellation, when such cancellation is in conformance with the provisions of the state laws applicable to this Agreement.

14. PAYMENTS AFTER DEFAULT/REINSTALLMENT: Any payments received by Lender after notice of cancellation of the insurance policy has been mailed may be credited to Borrower's account without any liability or obligation on Lender's part to request reinstatement of the cancelled policy. Upon the request of Borrower or Producer, Lender may, but is not obligated to, request reinstatement of the policy by the insurance company. Borrower agrees that Lender has no obligation to Borrower if the policy is not reinstated. Only the insurance company has the authority to reinstate a policy financed pursuant to this Agreement.

15. NOTICES: Any notice or service required by law shall be completed when Lender deposits it with the U.S. Post Office.

16. AGENT OR BROKER: Borrower understands that the Producer is the Borrower's insurance agent and not the agent of Lender and has no power or authority to make agreements or enter into contracts for Lender.

17. ACCEPTANCE OF AGREEMENT: This contract is subject to approval and acceptance by Lender and if not accepted, all payments received will be returned. Issuing checks or other forms of payment by the Lender for the policies listed in this agreement to the Producer or Insurer or paying a draft will be considered acceptance. Should a draft sent to the respective insurance company not be received or deposited by the insurance company, Lender's sole obligation hereunder will be to refund any payments made by the Borrower.

18. BORROWER ASSIGNMENT: Borrower agrees that Lender may assign this Agreement without notice to Borrower and in such event this Agreement shall inure to the benefit of and be binding to assignee.

19. ESTIMATED AND ADDITIONAL PREMIUMS: Borrower acknowledges that the premium upon which this loan has been determined is based upon information provided by Borrower and any modification required by the insurance company for any reason whatsoever subsequent to the date of this agreement will not relieve the Borrower of any obligations hereunder. Borrower agrees to promptly pay the insurance company, or agent, as applicable, any additional premiums which may result if policy is auditable or of a reporting type. Upon request of the Borrower, Lender has the option of advancing to the insuring company any additional premiums that may become due, less Lender's required down payment, adding the advanced amount plus any finance charge, to contract balance.

20. PROHIBITION AGAINST USURY: Under no circumstances shall Borrower have to pay more interest than is allowed under applicable law for this type of loan, and if Lender inadvertently contracts for charges, or receives more interest than is allowed, Lender will refund excess to the Borrower.

21. ILLEGALITY: If any provision contained in this Agreement should be invalid, illegal, or unenforceable in any respect, it shall not affect or impair the validity, legality and enforceability of the remaining provisions of this Agreement.

22. PRODUCER'S REPRESENTATIONS AND WARRANTIES (A) The Cash Down Payment shown above has been paid by the Borrower and any portion of which owing to the Company, MGA or Lender will be paid within 15 days of receipt. (B) That all policies listed are or will be in force on the stated effective dates; Producer is authorized by the issuing insurance companies and is duly licensed as required by state statute to produce the policies listed herein. (C) The Borrower's signature(s) is (are) genuine and authorized, or to the extent permitted by applicable law, the Producer has been authorized by Borrower to sign this Agreement on Borrower's behalf. (D) Producer has delivered a copy of this Agreement to Borrower. (E) None of the policies listed above are subject to reporting or retrospective rating provisions. (F) Policies subject to audit shall only be financed upon written approval by Lender. (G) Any return premiums, endorsements or other credits received by the Producer on behalf of Lender shall be remitted to Lender within 15 days of receipt. Producer is responsible to pay unearned commissions to Lender in the event of cancellation, provided they are not obligated to pay the same to the scheduled insurance company. (H) Producer acknowledges it is NOT an agent, affiliate or representative of Lender. (I) Producer warrants that no premium being financed is fully earned, either at the time of inception or upon a claim or loss event and the premiums are eligible to be financed. (J) Producer shall hold Lender, its officers, directors, agents, employees, representatives, parents, affiliates, subsidiaries, successors and assigns harmless from, and indemnify them against any liability, claim, cause of action, damages, losses and expenses (including, without limitation, reasonable attorney's fees and costs at all pre-trial, trial, post-trial, post-judgment and appellate levels) resulting from errors, omissions or inaccuracies of Producer in preparing this Agreement."

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age. The Federal Agency that administers compliance with this law is the Federal Trade Commission, 730 Peachtree Street, NE, Room 800, Atlanta Georgia 30308.

SEE ARBITRATION CLAUSE ON NEXT PAGE

## ARBITRATION:

Any claim, dispute or controversy (whether in contract, tort, or otherwise) arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause or part thereof or of the entire Agreement ("Claim"), shall be resolved, upon the election of you or by us, by binding arbitration pursuant to this arbitration provision and the Code of Procedure of the National Arbitration Forum in effect at the time the Claim is filed. All Claims shall be filed at any National Arbitration Forum office or at: Post Office Box 50191, Minneapolis, Minnesota 55405. Any arbitration pursuant to this Agreement will take place in the city nearest to your residence where a federal district court is located or such other location as you and we may mutually agree. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16. Each party shall bear their respective attorney's fees and costs incurred in such arbitration proceeding, regardless of which party prevails. The arbitrator shall apply relevant law and provide written reasoned, findings of fact and conclusions of law. The parties agree that the award shall be kept confidential except as may be necessary to enforce the terms of the award. **THE PARTIES AGREE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT, BUT THAT THEY AGREE THAT ANY PARTY MAY ELECT TO RESOLVE ANY CLAIM THROUGH ARBITRATION, AND THEY HEREBY WAIVE THEIR RIGHTS TO LITIGATE CLAIMS IN A COURT UPON AN ELECTION OF ARBITRATION.**