**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **ROOTED ENTERPRISE, LLC,** | § | CASE NO. 26-33356 |
| *Debtor.* | § | CHAPTER 11 |
| | § | |

**DEBTOR'S EXPEDITED MOTION FOR ORDER AUTHORIZING AND APPROVING SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO 11 U.S.C. §§ 105 AND 363**

**NOTICE PURSUANT TO LOCAL RULE 9013-1**

**A HEARING ON THIS MATTER IS SCHEDULED BEFORE THE HONORABLE JEFFREY P. NORMAN ON SEPTEMBER 15, 2026 AT 11:00 A.M. IN THE UNITED STATES BANKRUPTCY COURTROOM 403, 515 RUSK, HOUSTON, TEXAS 77002. PARTIES ARE AUTHORIZED TO APPEAR IN PERSON OR VIRTUALLY BY VIDEO AND TELEPHONE. PARTIES SHOULD CONSULT THE COURT'S WEBSITE FOR INSTRUCTION ON APPEARING IN COURT.**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

To the Honorable Jeffrey P. Norman
United States Bankruptcy Judge:

Rooted Enterprise, LLC ("**Debtor**" or "**Seller**"), debtor and debtor-in-possession in the above-captioned case, files this Motion for Order Authorizing and Approving Sale of Real Property Free and Clear of All Liens, Claims, Encumbrances, and Other Interests Pursuant to 11 U.S.C. §§ 105 and 363 (the "**Motion**"), and respectfully states as follows:

## I. SUMMARY

1. This is a Single Asset Real Estate ("**SARE**") Chapter 11 case. The Debtor's sole asset is a 2 acre parcel of real property with a 12,359-square-foot commercial building (the "**Property**") located at 2775 Barron Road, College Station, Texas 77845, legally described as Lot Two (2), Block One (1), Harper's Crossing, City of College Station, Brazos County, Texas (Doc. No. 1482927, Official Records of Brazos County). The Property was purpose-built as a childcare learning center facility. The Debtor has no employees, no operations other than ownership of the Property, and its sole source of income is rental income from its tenant, BCS Peas In A Pod Learning Center, LLC ("**PIAP**").

2. The Debtor has received a cash offer from a third party with no connections to the Debtor, PIAP or the principals of the Debtor, Oscar and Donna Properties, LLC ("**Buyer**")[1], to purchase the Property for $2,650,000.00, all cash, with closing on October 2, 2026, as may be modified, but no later than October 30, 2026[2]. This proposed transaction represents an arms-length negotiation between the Buyer and the Broker engaged by the Debtor. The Debtor, through its Court-authorized broker, has marketed the Property and believes this offer represents a reasonable value

[1] Upon information and belief, the Buyer operates a nearby business and plans to relocate the same to the Property upon closing of the sale.

[2] Debtor anticipates the closing date will be changed to October 5, 2026.

for the Property in the current market and, as further detailed below, given the circumstances surrounding this case. The Debtor seeks Court authority to sell the Property to Buyer on the terms set forth in the Sale Agreement (as defined herein) and this Motion, subject to any higher and better offers received prior to entry of an order approving this sale.

3. The sale of the Property will not pay all allowed claims in full. Based on the Debtor's current analysis, the estimated net proceeds from the sale, after payment of closing costs, broker commissions, and ad valorem property taxes, are estimated to be approximately $2,346,676.27. Prosperity Bank, the Debtor's first lien holder, has asserted a payoff through October 30, 2026 of approximately $2,461,438.35[3], including contract interest, default interest, late charges, penalties and other charges (excluding attorneys' fees and expenses incurred after July 31, 2026). The Debtor is in the process of reviewing the claim filed by Prosperity Bank (Claim No. 2) and may have an objection to portions of Prosperity Bank's claim[4]. Accordingly, the sale may not generate sufficient proceeds to pay Prosperity Bank's claim in full, including all claimed default interest and post-petition attorneys' fees and expenses. The Debtor reserves all rights to contest the amount and allowability of Prosperity Bank's claim, including any claim for default interest, attorneys' fees, and other charges. The U.S. Small Business Administration ("**SBA**"), holder of the second lien, is unlikely to receive any distribution from the sale proceeds after payment of senior obligations. Although the SBA may not receive proceeds from the proposed sale, the SBA shall

[3]Prosperity's payoff estimate states, "payoff will be subject to an additional $1,003.1257 of interest per day." *See* **Exhibit "B", Prosperity's Payoff.** Debtor believes a sale can be closed by October 2, 2026, as may be modified, but no later than October 30, 2026. Debtor anticipates the closing date will be changed to October 5, 2026. If the closing date is prior to October 30, 2026, this would decrease Prosperity's payoff by $1,003.1257 every day prior to October 30, 2026. Debtor estimates if the sale on the Property closed by October 2, 2026, the interest would decrease by $28,087.52. Debtor estimates Prosperity's payoff would then be approximately $2,433,350.83. Debtor estimates if the sale on the Property closed by October 5, 2026, the interest would decrease by $25,078.14. Debtor estimates Prosperity's payoff would then be approximately $2,436,360.21.

[4] On August 10, 2026, the Debtor and Prosperity entered into an agreed order authorizing continued use cash collateral (Doc. No. 49) which also provided the Debtor with a thirty (30) day period to object to Prosperity Bank's claim once filed. Prosperity Bank filed a Proof of Claim on August 13, 2026 in the amount of $2,293,669.72 (Claim No. 2).

retain full recourse on the guaranty of the loan executed by the principals of the Debtor. Despite these limitations, the Debtor submits that the sale is in the best interests of the estate for the reasons set forth herein.

4. The sale is necessitated by: (a) the SARE designation of this case and the associated statutory deadlines under 11 U.S.C. § 362(d)(3); (b) Prosperity Bank's refusal to agree to cash collateral authorization beyond September 30, 2026, and its stated intent to seek relief from the automatic stay if the Property is not under contract by September 30, 2026 and sold by October 30, 2026; (c) the tenant intents to vacate the Property no later than September 30, 2026 given an inability to continue paying rent beyond this date; and (d) the absence of any realistic path to confirmation of a Chapter 11 plan of reorganization. A sale of the Property is the only path forward. Given the location of the Property and nature of the building designed as a preschool center, selling to a day care is the highest and best use of the property. This property is located in College Station, a substantially smaller real estate market than Houston, which limits the pool of prospective buyers to a narrow set of categories: other daycare or early learning operators, investors (for whom the Property's vacancy is a deterrent and depresses value), or a non-childcare end user who would need to commit substantial resources to repurpose the building. Under these circumstances, a prompt sale of the Property represents the highest and best use of the estate's sole asset.

5. The sale price of $2,650,000.00 is below the Brazos County Appraisal District's appraised value of the Property[5]. Notwithstanding that fact, the Debtor submits that the sale at this price is nonetheless appropriate and in the best interests of the estate because: (a) the appraised value does not account for current market conditions and the Property's limited buyer pool as a purpose-built

[5] The Debtor submits that this does not preclude approval of the sale under § 363(b), as the appraised value does not reflect current market conditions, the Property's limited buyer pool, lack of tenant for the Property, or the urgency necessitated by the SARE designation and cash collateral constraints. A forced foreclosure sale would likely yield materially less than the proposed sale price.

childcare facility; (b) the Court-authorized broker has marketed the Property and this is the best offer received; (c) continued delay risks the loss of the buyer, foreclosure by Prosperity Bank, and a forced sale at a potentially lower price; (d) the Property is being sold without a tenant, and (e) the sale avoids further accrual of default interest, post-petition interest, and attorneys' fees that reduce the net recovery to the estate.

6. The Broker will continue to market the Property during the notice period of this Motion in an effort to obtain a higher and better offers received prior to entry of an order approving this sale.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1408.

9. The statutory predicates for the relief requested are 11 U.S.C. §§ 105(a), 363(b), 363(f), and 363(m), and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure.

## III. BACKGROUND

### A. The Debtor and the Bankruptcy Case

10. Rooted Enterprise, LLC is a Texas limited liability company formed on June 16, 2021, for the sole purpose of acquiring, owning, and leasing the Property. The Debtor is managed by Stephanie Shoemake as Manager/Member. The Debtor has no employees and no operations other than ownership of the Property. On May 11, 2026 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. The Debtor continues to manage the Property as debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in this case.

11. This case has been designated as a Single Asset Real Estate case under 11 U.S.C. § 101(51B). Accordingly, the provisions of 11 U.S.C. § 362(d)(3) apply and impose statutory deadlines that the Debtor must satisfy to maintain the automatic stay.

B. The Property

12. The Property is a 2 acre parcel of land with a 12,359-square-foot commercial building located at 2775 Barron Road, College Station, Texas 77845, legally described as Lot Two (2), Block One (1), Harper's Crossing, City of College Station, Brazos County, Texas. The Property was purpose-built and renovated for use as a childcare and early learning center. The Property is the Debtor's only significant asset. The Brazos County Appraisal District has valued the Property at approximately $3,550,000.00 for tax year purposes, and the Court-authorized broker has estimated a listing range of $3.7 to $4.3 million. This listing range assumes a tenant in place with a contract to be assumed by a potential Buyer.

C. The Secured Creditors and Lien Structure

13. Prosperity Bank ("**Prosperity Bank**") holds a first priority lien on the Property pursuant to that certain Promissory Note (original principal $1,761,000.00, modified to $2,073,000.00), Deed of Trust, and related loan documents. Prosperity Bank accelerated the loan on November 3, 2025, and posted the Property for a June 2026 foreclosure sale, which precipitated the filing of this bankruptcy case. Prosperity Bank has filed a Proof of Claim in the amount of $2,293,669.72 [Proof of Claim #2]. Prosperity Bank has provided a payoff statement through October 30, 2026 in the amount of $2,461,438.35, comprised of unpaid principal of $2,034,115.95, accrued interest through October 30, 2026 of $353,065.82, late charges of $4,254.50, a prepayment penalty of $20,341.16, and attorneys' fees and other charges of $49,660.92 through July 31, 2026. Prosperity Bank's payoff does not include attorneys' fees and expenses incurred after July 31, 2026. The

Debtor reserves all rights to contest and object to the amount, validity, and allowability of Prosperity Bank's claim, including without limitation any claim for default interest, attorneys' fees, prepayment penalties, and other charges.

14. The U.S. Small Business Administration ("**SBA**") holds a second priority lien on the Property pursuant to an SBA 504 loan (original principal $1,668,000.00). The SBA has not filed a proof of claim in this case and has not appeared as a party. Based on the current proposed sale price and estimated senior obligations, it is unlikely that the SBA will receive any distribution from the sale proceeds after payment of Prosperity Bank's claim and closing costs. The SBA's lien will be addressed through the Sale Order pursuant to 11 U.S.C. § 363(f), with its lien attaching to any remaining net proceeds in order of priority.

15. The Brazos Central Appraisal District and/or applicable taxing authorities hold statutory liens against the Property for unpaid ad valorem real property taxes. Delinquent 2025 property taxes, including accrued penalties and interest, are approximately $81,000.00. Additionally, 2026 ad valorem property taxes are estimated at approximately $67,696.46[6] which prorated as of the closing date should be close to $52,739.73. All outstanding ad valorem taxes will be paid from sale proceeds at closing.

D. <u>The Tenant and the Lease</u>

16. The Property is currently leased to BCS Peas In A Pod Learning Center, LLC ("**PIAP**"), a Texas limited liability company, pursuant to a Triple Net Lease Agreement dated August 29, 2022, at a base rent of $22,000.00 per month plus operating expenses (the "**Lease**"). PIAP is owned and managed by Stephanie Shoemake, who is also the Manager/Member of the Debtor. Since the Petition Date, PIAP has been unable to pay the full contractual rent. PIAP has remitted the

---

[6] *See Proof of Claim #1*.

following rent payments to Debtor: $5,000.00 for June 2026, $15,000 for July 2026, $16,734.40 for August 2026. PIAP has informed the Debtor that it is vacating the premises no later than September 30, 2026 as it is unable to continue making rental payments at the required rate beyond this period. The Lease will be rejected as part of the sale process and Buyer will take possession of the Property without a tenant.

17. Pursuant to the Debtor's amended Schedules and Statement of Financial Affairs, PIAP owes the Debtor approximately $250,000.00 in prepetition rent arrears and property taxes. These arrears are an asset of the bankruptcy estate and are not being transferred to Buyer as part of this sale.

E. The Broker and Marketing Efforts

18. On August 10, 2026, the Court entered an order authorizing the employment of Rick Lemons of LKG Realty Advisors as the Debtor's real estate broker to market and sell the Property [Doc. No. 33]. Mr. Lemons, CCIM, is a licensed commercial real estate broker with extensive experience in the College Station/Bryan commercial real estate market. Since his engagement, Mr. Lemons has actively marketed the Property, including showing the Property to numerous prospective investors and commercial buyers. The Property is listed for $3.9 million.

19. Following the marketing process, the best offer received is the Buyer's offer of $2,650,000.00. While the offer is far below the listing price and below the Brazos County Appraisal District's valuation, the Debtor believes that the offer reflects current market conditions for a purpose-built childcare facility, the Property's physical condition, Property being marketed without a tenant, and the time constraints imposed by the Debtor's SARE status and cash collateral limitations. The Debtor submits that this is the highest and best offer available in the current market within the time available.

F. The Cash Collateral Order and SARE Constraints

20. On August 10, 2026, the Court entered the Agreed Order on Continued Use of Cash Collateral [Doc. No. 49] (the "**Cash Collateral Order**"). The Cash Collateral Order authorizes the Debtor to use cash collateral only through September 30, 2026. The Cash Collateral Order imposes the following critical deadlines: (a) the Debtor must have a signed sale contract accepted and title opened by a reputable title company by September 30, 2026, in an amount sufficient to pay Prosperity Bank in full including default interest and attorneys' fees; and (b) the sale must close and Prosperity Bank must be paid in full by October 30, 2026. If either deadline is missed, the automatic stay terminates automatically in its entirety as to Prosperity Bank and the Property, and Prosperity Bank may immediately proceed to foreclosure without further court order.

21. As adequate protection for the Debtor's continued use of cash collateral, the Cash Collateral Order requires the Debtor to make monthly interest-only adequate protection payments to Prosperity Bank of $15,000.00, and grants Prosperity Bank and the SBA replacement liens on the Debtor's post-petition assets of the same validity, priority, and extent as their respective pre-petition liens. The Cash Collateral Order does not provide Prosperity Bank with any additional collateral cushion beyond such replacement liens.

22. The SARE designation of this case imposes additional constraints under 11 U.S.C. § 362(d)(3). Prosperity Bank has indicated it will not agree to any extension of the cash collateral period beyond September 30, 2026, and will seek relief from the automatic stay if the Property is not sold within the agreed timeframe. Given these constraints, a prompt sale of the Property is the only viable path to an orderly disposition of the estate's assets.

## IV. THE PROPOSED SALE

### A. Material Terms of the Sale Agreement

23. The Debtor has entered into a Commercial Contract – Improved Property (the "**Sale Agreement**") with Oscar and Donna Properties, LLC, a Texas limited liability company ("**Buyer**"), PO Box 12407, College Station, Texas 77845, for the purchase and sale of the Property. A copy of the Sale Agreement is attached hereto as **Exhibit "A"**, subject to higher and better offers received prior to entry of an order approving this sale. The material terms of the Sale Agreement are as follows:

| **Term** | **Detail** |
|---|---|
| Seller | Rooted Enterprise, LLC |
| Buyer | Oscar and Donna Properties, LLC |
| Property | 2775 Barron Rd, College Station, TX 77845 (Harper's Crossing, Block 1, Lot 2) |
| Purchase Price | $2,650,000.00 cash |
| Earnest Money | $25,000.00 (deposited with Frontier Title) |
| Independent Consideration | $1,000.00 (credited to sales price at closing) |
| Closing Date | On or before October 2, 2026, may be modified, but before October 30, 2026[7] |
| Broker — Seller | LKG Realty Advisors (Rick Lemons, CCIM) — 2.5% |
| Broker — Buyer | eXp Realty (Trinh Galvan) — 3% |

[7] Debtor anticipates the closing date will be changed to October 5, 2026.

| **Term** | **Detail** |
|---|---|
| Total Commission | 5.5% of purchase price ($159,000.00) |
| Sale Condition | Subject to Bankruptcy Court approval |
| Lease | PIAP Lease to be rejected; Buyer takes vacant possession |

24. The Sale Agreement is contingent upon entry of an order by this Court approving the sale pursuant to 11 U.S.C. § 363 (the "**Sale Order**"). Neither party is obligated to close the transaction unless and until the Sale Order has been entered.

B. Estimated Net Proceeds and Distribution

25. The following is the Debtor's current estimate of the sources and uses of proceeds from the proposed sale, based on the best information currently available. All amounts are estimates and subject to change:

| | |
|---|---|
| **GROSS PROCEEDS** | |
| Purchase Price | $2,650,000.00 |
| **LESS: CLOSING COSTS AND EXPENSES** | |
| Broker Commission — LKG Realty Advisors (2.5%) | ($66,250.00) |
| Broker Commission — eXp Realty (3%) | ($79,500.00) |
| Attorney Fees / Document Preparation | ($8,000.00) |
| Title Policy | ($12,534.00) |
| Survey | ($2,500.00) |
| Escrow Fee | ($500.00) |
| Mail/Recording Fees | ($300.00) |
| 2025 Ad Valorem Taxes (with penalties and interest, approx.) | ($81,000.00) |
| 2026 Ad Valorem Taxes (prorated estimate) | ($52,739.73) |
| **ESTIMATED NET PROCEEDS AVAILABLE FOR LIEN PAYMENTS** | **~$2,346,676.27** |
| **LESS: SECURED CLAIMS** | |

| | |
|---|---|
| Prosperity Bank Payoff (through 10/30/26, excl. post-7/31/26 fees) | ($2,461,438.35)[8] |
| **ESTIMATED SHORTFALL / (SURPLUS) TO PROSPERITY BANK** | **~($114,762.08)** |
| SBA Second Lien (original principal $1,668,000.00) | $0 estimated |
| Unsecured Creditors | $0 estimated |

26. As reflected above, the estimated net sale proceeds may be insufficient to pay Prosperity Bank's full claimed payoff, including default interest and all post-petition attorneys' fees and expenses. To the extent the net proceeds are insufficient to pay Prosperity Bank's claim in full, Prosperity Bank may be under secured as to the shortfall amount, and the allowability of post-petition interest, attorneys' fees, and other charges on the under secured portion of its claim is subject to 11 U.S.C. § 506(b), which permits such recovery only for oversecured creditors. The Debtor is evaluating the possibility of timely filing an objection to Prosperity Bank's proof of claim as provided by the Cash Collateral Order [Doc. No. 49, ¶4]. In the event the parties cannot resolve the claim dispute prior to closing, the disputed portion of Prosperity Bank's claim shall be escrowed from sale proceeds at closing in accordance with the Cash Collateral Order[9].

27. The sale will not pay all allowed claims in full. The SBA, as second lien holder, will receive no distribution from sale proceeds. There are no other material allowed unsecured claims in this case, as the Debtor has amended its schedules to remove PIAP as a scheduled unsecured creditor

[8] Debtor believes a sale can be closed by October 2, 2026, as may be modified, but no later than October 30, 2026. Debtor anticipates the closing date will be changed to October 5, 2026. If the closing date is prior to October 30, 2026, this would decrease Prosperity's payoff by $1,003.1257 every day prior to October 30, 2026. Debtor estimates if the sale on the Property closed by October 2, 2026, the interest would decrease by $28,087.52. Debtor estimates Prosperity's payoff would then be approximately $2,433,350.83. Debtor estimates if the sale on the Property closed by October 5, 2026, the interest would decrease by $25,078.14. Debtor estimates Prosperity's payoff would then be approximately $2,436,360.21

[9] The Debtor reserves all rights to object to Prosperity Bank's proof of claim, including the claimed default interest rate, prepayment penalty, and post-petition attorneys' fees and expenses, within the time periods established by the Cash Collateral Order [Doc. No. 49, ¶4]. Nothing in this Motion constitutes an admission of the validity or amount of any claim asserted by Prosperity Bank.

and has reclassified the applicable taxing authority to secured status. The PIAP rent arrears of approximately $250,000.00 remain an asset of the bankruptcy estate.

## V. RELIEF REQUESTED

28. By this Motion, pursuant to 11 U.S.C. §§ 105, 363(b), 363(f), and 363(m) and Bankruptcy Rules 2002, 6004, and 9014, the Debtor seeks:

a. Approval of the Sale Agreement and authorization of the sale of the Property to Buyer free and clear of all liens, claims, interests, and encumbrances;

b. A finding that Buyer is a good-faith purchaser entitled to the protections of 11 U.S.C. § 363(m);

c. Authorization to pay all closing costs, commissions, taxes, and other amounts set forth herein from the sale proceeds;

d. Approval of the rejection of the PIAP Lease pursuant to 11 U.S.C. § 365, concurrent with or as part of the Sale Order;

e. Waiver of the fourteen (14)-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d); and

f. Such other and further relief as is just and proper.

## VI. ARGUMENT AND AUTHORITIES

### A. <u>The Sale Satisfies the Business Judgment Standard Under § 363(b)</u>

29. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts have held that Section 363(b)(1) may be used to dispose of all or substantially all of a Chapter 11 debtor's assets by liquidation. *In re Tex. Rangers Baseball Ptnrs*, 431 B.R. 707, 710 (Bankr. N.D. Tex. 2010); *In re Bombay Co*., 2007 Bankr. LEXIS 3218, *6 (Bankr. N.D. Tex. Sept. 26, 2007).

30. In determining whether to approve a proposed sale, the Court should grant the relief sought if the debtor is exercising sound business judgment. *Richmond Leasing Co. v. Capital Bank, N.A.*,

762 F.2d 1303, 1311 n.10 (5th Cir. 1985); *In re Bombay Co*., 2007 Bankr. LEXIS 3218 at *12. Section 363 does not require the Court to substitute its own business judgment for that of the debtor. See, e.g., *In re Ionosphere Clubs, Inc*., 100 B.R. 670, 678 (Bankr. S.D.N.Y. 1989). Rather, the Court should ascertain whether the debtor has articulated a valid business justification for the proposed transaction. See, e.g., *Lewis v. Anderson*, 615 F.2d 778, 781 (9th Cir. 1979).

31. The Debtor has ample business justification for the proposed sale. First, this is a SARE case and the Debtor has no realistic prospect of confirming a plan of reorganization. The Debtor's sole tenant has indicated that it will vacate the Property no later than September 30, 2026 as it is unable to continue paying the required rental payments. Without rental income, the Debtor cannot service its secured debt, maintain the Property, remit adequate protection payments to Prosperity Bank or fund a plan. Second, Prosperity Bank will not consent to cash collateral use beyond September 30, 2026, and has reserved all rights to seek stay relief and pursue foreclosure if the Property is not sold by October 30, 2026. A forced foreclosure sale would yield lower proceeds than an orderly § 363 sale. Third, the proposed sale price, while below the appraised value, represents the best available offer from an active marketing process conducted by a Court-authorized broker. Fourth, continued delay only increases the accrual of default interest, post-petition interest, and professional fees that further reduce the net recovery to the estate and its creditors.

B. The Sale Satisfies § 363(f) — Sale Free and Clear of Liens

32. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell property free and clear of any lien, claim, interest, or encumbrance if at least one of the following conditions is met: (1) applicable non-bankruptcy law permits sale free and clear of such interest; (2) the lienholder consents; (3) such interest is a lien and the price is greater than the aggregate value of all liens on

the property; (4) such interest is subject to a bona fide dispute; or (5) the entity could be compelled to accept a money satisfaction of its interest. *11 U.S.C. § 363(f)*. Section 363(f) is disjunctive and requires satisfaction of only one prong. *In re Kellstrom Indus., Inc*., 282 B.R. 787, 793 (Bankr. D. Del. 2002).

33. The sale satisfies multiple prongs of § 363(f):

a. **§ 363(f)(3) — Price Exceeds Aggregate Lien Value:** The proposed sale price of $2,650,000.00 may exceed the value of the aggregate undisputed valid liens on the Property. The Debtor disputes the full amount of Prosperity Bank's claimed payoff, including the claimed default interest, prepayment penalty, and post-petition attorneys' fees. To the extent Prosperity Bank is under secured on some portion of its claim, the sale price exceeds the aggregate value of valid secured liens.

b. **§ 363(f)(4) — Bona Fide Dispute:** The amount and allowability of Prosperity Bank's claimed payoff, including claimed default interest at the rate of 18%, prepayment penalty, and attorneys' fees incurred post-petition, are subject to bona fide dispute. 11 U.S.C. § 506(b) limits recovery of post-petition interest, fees, and charges to oversecured creditors. To the extent Prosperity Bank is not fully oversecured after accounting for the net sale proceeds, the full claimed payoff amount is in bona fide dispute.

c. **§ 363(f)(5) — Money Satisfaction:** All lienholders could be compelled in a legal or equitable proceeding to accept a money satisfaction of their interests. Each lienholder's interest in the Property is a monetary obligation, a secured debt, that is satisfied by payment of money.

34. All valid liens on the Property shall attach to the proceeds of the sale with the same validity, priority, and extent as they had against the Property immediately before closing, to be distributed in accordance with the Sale Order and applicable law.

C. <u>Prosperity Bank's Claim May Be Under Secured; 11 U.S.C. § 506(b) Limits Recovery of Interest, Fees, and Charges</u>

35. To the extent net sale proceeds are insufficient to pay Prosperity Bank's full claimed payoff, Prosperity Bank may be under secured as to the shortfall. Under 11 U.S.C. § 506(b), post-petition interest and any reasonable fees, costs, or charges are allowed to a secured creditor only

to the extent that its allowed secured claim is secured by property with a value greater than the amount of the claim. That is, only if the creditor is oversecured. *See United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988) (under secured creditor not entitled to post-petition interest as adequate protection under § 362(d)(1), because § 506(b) permits recovery of post-petition interest only out of an oversecured creditor's collateral cushion).

36. During the case, Prosperity Bank has received adequate protection consisting of monthly interest-only payments and replacement liens of the same priority and extent as its pre-petition liens, rather than any additional collateral cushion. To the extent Prosperity Bank is ultimately determined to be under secured, the Debtor reserves the right to argue that such adequate protection payments should be applied against principal rather than treated as compensable interest recoverable under § 506(b).

37. Ad valorem tax liens on the Property are senior to Prosperity Bank's lien under Texas Property Code § 32.05(b). In a sale free and clear of liens under 11 U.S.C. § 363(f), such senior tax liens are satisfied from sale proceeds ahead of Prosperity Bank's lien in accordance with their priority, consistent with the general rule that liens attach to the proceeds of a § 363 sale in the same order of priority they held against the Property.

38. The Debtor reserves all arguments regarding the allowability of default interest, prepayment penalties, and post-petition attorneys' fees and expenses claimed by Prosperity Bank, and will address these issues, to the extent unresolved, in connection with the Debtor's objection to Prosperity Bank's proof of claim.

D. Buyer Is Entitled to Good Faith Purchaser Protection Under § 363(m)

39. Section 363(m) of the Bankruptcy Code protects the validity of a sale to a good faith purchaser. *11 U.S.C. § 363(m).* Oscar and Donna Properties, LLC is not an insider of the Debtor

as that term is defined in 11 U.S.C. § 101(31). The Sale Agreement was negotiated at arm's length, in good faith, and without fraud or collusion. No attempt has been made by any party to take unfair advantage of the other. The Debtor requests that the Court find that Buyer is a good faith purchaser entitled to the full protections of 11 U.S.C. § 363(m).

E. Rejection of the PIAP Lease Under § 365

40. As part of the proposed sale, the Debtor seeks rejection of the PIAP Lease pursuant to 11 U.S.C. § 365. The Lease is an executory contract. PIAP has substantially ceased paying rent and has informed the Debtor it is moving out by September 30, 2026. Rejection of the Lease is in the best interests of the estate as it is a prerequisite to delivering vacant possession of the Property to Buyer. The Debtor notes that the rejection implicates a related-party transaction, as Stephanie Shoemake is both the Manager/Member of the Debtor and the owner of PIAP. This relationship has been disclosed to the Court and all parties in interest, and will be subject to the Court's review in connection with the Sale Order. PIAP will be served with notice of this Motion and the proposed rejection.

F. Waiver of the 14-Day Stay

41. The Debtor requests that the Court waive the fourteen (14)-day stay of the Sale Order imposed by Bankruptcy Rule 6004(h). The Cash Collateral Order requires the sale to close by October 30, 2026, and any delay risks the loss of the Buyer, automatic stay termination, and potential foreclosure by Prosperity Bank. Good cause exists to waive the stay and allow immediate effectiveness of the Sale Order.

## VII. NOTICE

42. Pursuant to Bankruptcy Rules 2002(a)(2) and 6004, the Debtor will provide twenty-one (21) days' written notice of this Motion to: (i) the Office of the United States Trustee for the

Southern District of Texas; (ii) Prosperity Bank, through its counsel of record, Preston T. Towber, Towber Law Firm, PLLC; (iii) the U.S. Small Business Administration; (iv) Brazos Central Appraisal District and all applicable taxing authorities; (v) BCS Peas In A Pod Learning Center, LLC (PIAP), and its counsel if any; (vi) Oscar and Donna Properties, LLC (Buyer), through its counsel Patrick Murphy; (vii) ETI Financial Corporation; (viii) Frontier Title Company; (ix) all parties who have filed notices of appearance or requests for notice in this case; and (x) all other creditors and parties in interest on the mailing matrix maintained by the Clerk of the Court.

## VIII. CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter an order:

a. Approving the Sale Agreement and authorizing the Debtor to sell the Property to Oscar and Donna Properties, LLC free and clear of all liens, claims, interests, and encumbrances pursuant to 11 U.S.C. §§ 363(b) and 363(f), with all valid liens to attach to the net sale proceeds;

b. Finding that Buyer is a good-faith purchaser entitled to the protections of 11 U.S.C. § 363(m);

c. Authorizing the Debtor to pay from sale proceeds at closing: all ad valorem property taxes (including 2025 delinquent taxes of approximately $81,000.00 and prorated 2026 taxes), broker commissions totaling $159,000.00, and all other customary closing costs;

d. Approving the rejection of the PIAP Lease pursuant to 11 U.S.C. § 365 concurrent with the closing;

e. Providing that the disputed portion of Prosperity Bank's claim, if any, shall be escrowed from sale proceeds at closing pending resolution of the Debtor's claim objection, with Prosperity Bank's lien attaching to such escrowed funds;

f. Waiving the fourteen (14)-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d); and

g. Granting such other and further relief as the Court deems just and proper.

DATED: August 16, 2026

Respectfully submitted,

**HASELDEN FARROW PLLC**
By: /s/ Elyse M. Farrow
Elyse M. Farrow
State Bar No. 24062719
708 Main Street, 10th Floor
Houston, Texas 77002
Telephone: (832) 819-1149
Facsimile: (866) 405-6038
efarrow@haseldenfarrow.com
*Attorneys for Debtor and Debtor in Possession Rooted Enterprise, LLC*

**HASELDEN FARROW PLLC**
MELISSA A. HASELDEN
State Bar No. 00794778
708 Main Street, 10th Floor
Houston, Texas 77002
Telephone: (832) 819-1149
Facsimile: (866) 405-6038
mhaselden@haseldenfarrow.com
*Attorneys for Debtor and Debtor in Possession*
*Rooted Enterprise, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2026, a true and correct copy of the foregoing Expedited Motion was served on all parties receiving electronic notice through the Court's CM/ECF system, and on all other parties identified in the notice provisions of this Motion by first class U.S. mail.

/s/ Elyse M. Farrow
Elyse M. Farrow