**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **ROOTED ENTERPRISE, LLC,** | § | CASE NO. 26-33356 |
| | § | |
| *Debtor.* | § | CHAPTER 11 |

**ORDER AUTHORIZING AND APPROVING SALE OF REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO 11 U.S.C. §§ 105 AND 363**
(Relates to Doc. No. ___)

Upon consideration of the *Debtor's Expedited Motion for Order Authorizing and Approving Sale of Real Property Free and Clear of All Liens, Claims, Encumbrances, and Other Interests Pursuant to 11 U.S.C. §§ 105 and 363* (the "**Motion**") [Doc. No. ___] filed by Rooted Enterprise, LLC, debtor and debtor-in-possession (the "**Debtor**" or "**Seller**"), for authority to sell the real property commonly known as 2775 Barron Road, College Station, Texas 77845, legally described as Lot Two (2), Block One (1), Harper's Crossing, City of College Station, Brazos County, Texas (Doc. No. 1482927, Official Records of Brazos County) (the "**Property**"), the Court having reviewed the Motion and the record in this case, and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is required, and after due deliberation, the Court FINDS AND CONCLUDES AS FOLLOWS:

A. This Court has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 105 and 363. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B. Venue of this case and this proceeding in this District is proper pursuant to 28 U.S.C. § 1408.

C. Proper and adequate notice of the Motion and the relief requested therein has been given in accordance with Bankruptcy Rules 2002(a)(2) and 6004, and no other or further notice is necessary.

D. Rooted Enterprise, LLC is a Texas limited liability company whose sole asset is the Property, a 12,359-square-foot commercial building purpose-built as a childcare and early learning center facility, and whose sole source of income is rental income from its tenant, BCS Peas In A Pod Learning Center, LLC ("**PIAP**"). This is a Single Asset Real Estate case under 11 U.S.C. § 101(51B), subject to the deadlines of 11 U.S.C. § 362(d)(3).

E. Sale of the Property to Oscar and Donna Properties, LLC, its successors or assigns (collectively, the "**Buyer**"), pursuant to and in accordance with the terms and conditions of that certain Commercial Contract — Improved Property between the Debtor and the Buyer, a copy of which was attached to the Motion as Exhibit "A" (the "**Contract**"), for a purchase price of $2,650,000.00 cash, is an appropriate and sound exercise of the Debtor's business judgment, in light of, among other things: (a) the deadlines imposed by the Agreed Order on Continued Use of Cash Collateral [Doc. No. 49] (the "**Cash Collateral Order**"), which requires the Property to be under contract and title opened by September 30, 2026 and the sale to close and Prosperity Bank to be paid by October 30, 2026, absent which the automatic stay terminates as to Prosperity Bank and the Property without further order of this Court; (b) loss of any income due to PIAP's intent to vacate the Property; and (c) the absence of any realistic prospect of confirming a plan of reorganization.

F. The Buyer is not an insider or affiliate of the Debtor or its affiliates or principals and the Contract was negotiated at arm's length, in good faith, and without collusion.

G. The sale to the Buyer as set forth in the Contract was, at all times prior to entry of this Order, subject to the Debtor's receipt of any higher or otherwise better offer for the Property. The Debtor, through the Broker, continued to market the Property throughout the notice period on the Motion in an effort to obtain such an offer. As of the entry of this Order, no higher or otherwise better offer for the Property has been received or presented to the Court, and the sale to the Buyer on the terms set forth in the Contract represents the highest and best offer available for the Property.

H. The sale of the Property to the Buyer free and clear of all liens, claims, encumbrances, and other interests satisfies the requirements of 11 U.S.C. § 363(f), including, without limitation, because such liens, claims, encumbrances, and interests are subject to a bona fide dispute, and/or the holders thereof could be compelled in a legal or equitable proceeding to accept a money satisfaction thereof, and/or the Purchase Price may exceed the aggregate value of all valid and undisputed liens against the Property. All such liens, claims, encumbrances, and other interests shall attach to the Sale Proceeds (as defined below) with the same validity, priority, and extent as existed against the Property immediately prior to Closing.

I. The Brazos Central Appraisal District and other applicable taxing authorities hold valid and existing statutory liens against the Property for unpaid ad valorem property taxes, which liens are senior to the lien of Prosperity Bank and all other liens on the Property pursuant to Texas Property Code § 32.05(b), and shall be paid in full from the Sale Proceeds at Closing prior to distributions to Prosperity Bank.

J. Prosperity Bank holds a first-priority lien on the Property and has asserted a payoff of approximately $2,461,438.35 through October 30, 2026, exclusive of attorneys' fees and expenses incurred after July 31, 2026. The Sale Proceeds may be insufficient to satisfy Prosperity Bank's claim in full. The allowed amount of Prosperity Bank's claim, including the allowability

under 11 U.S.C. § 506(b) of any claimed default interest, prepayment penalty, and post-petition attorneys' fees and expenses, is not determined by this Order and remains subject to the Debtor's objection to Prosperity Bank's proof of claim. All parties' rights and defenses with respect to the allowed amount and characterization of Prosperity Bank's claim are expressly preserved.

K. The U.S. Small Business Administration holds a second-priority lien on the Property and, based on current estimates, is unlikely to receive any distribution from the Sale Proceeds after payment of senior obligations and closing costs. The lien of the U.S. Small Business Administration shall attach to any remaining Sale Proceeds in order of priority.

L. The Buyer is not an "insider" of the Debtor, as that term is defined in 11 U.S.C. § 101(31), and is a good faith purchaser entitled to the protections of 11 U.S.C. § 363(m).

M. Rejection of the Triple Net Lease Agreement dated August 29, 2022 between the Debtor and PIAP (the "**Lease**") pursuant to 11 U.S.C. § 365 is a sound exercise of the Debtor's business judgment and is necessary to deliver vacant possession of the Property to the Buyer at Closing. The Court has considered the disclosed relationship between the Debtor and PIAP, namely that Stephanie Shoemake serves as Manager/Member of both the Debtor and PIAP, and finds that such relationship does not preclude the relief granted herein.

N. The relief granted herein is in the best interests of the Debtor, its bankruptcy estate, and its creditors.

O. Given the deadlines imposed by the Cash Collateral Order and the SARE designation of this case, cause exists to waive the fourteen (14)-day stay of this Order otherwise imposed by Bankruptcy Rules 6004(h) and 6006(d).

P. After due deliberation, good and sufficient cause exists for the granting of the relief set forth herein.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein, and the Contract, a copy of which is attached as Exhibit "A," is APPROVED.

2. The sale of the Property to the Buyer approved herein was, at all times prior to entry of this Order, subject to the Debtor's receipt of any higher or otherwise better offer for the Property. No such higher or otherwise better offer having been received or presented to the Court as of entry of this Order, the sale to the Buyer on the terms set forth in the Contract is APPROVED as the highest and best offer available for the Property.

3. The Debtor is authorized to sell the Property to the Buyer pursuant to and in accordance with the terms of the Contract, free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, the liens of Prosperity Bank and the U.S. Small Business Administration, with all such liens, claims, encumbrances, and other interests to attach to the net proceeds of the sale (the "**Sale Proceeds**") in the same order of priority, and with the same validity and extent, as existed against the Property immediately prior to the closing of the sale (the "**Closing**", and the date on which the Closing occurs, the "**Closing Date**").

4. The Debtor, by and through Stephanie Shoemake, its Manager/Member, or such other duly authorized representative of the Debtor, is authorized to: (a) execute all documents and instruments necessary or appropriate to consummate the Closing under the Contract; (b) take any and all actions and make any reasonable disbursements necessary or appropriate to consummate the sale of the Property; and (c) take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring the Property to the Buyer.

5. The Debtor is authorized to pay, at and as a condition of Closing, directly from the Sale Proceeds, the following (all amounts approximate and subject to final Closing statement): (a) real estate broker commissions totaling five and one half percent (5.5%) of the Purchase Price estimated at $145,750.00, to be split in accordance with the listing agreement between brokers LKG Realty Advisors (Listing Agent Rick Lemons, CCIM) and eXp Realty (Listing Agent Trinh Galvan); (b) all unpaid ad valorem property taxes assessed against the Property, including approximately $81,000.00 in delinquent 2025 taxes, penalties, and interest, and estimated at $52,739.73 in prorated 2026 taxes; and (c) all other customary and reasonable closing costs, including, without limitation, attorneys' fees and document preparation charges.

6. The terms of the Contract and any ancillary agreements thereto may be waived, modified, amended, or supplemented by written agreement signed by the Debtor and the Buyer without further order of this Court, provided that any such waiver, modification, amendment, or supplement is not material and is not adverse to the Debtor's estate.

7. Upon Closing, the transfer of the Property to the Buyer shall constitute a legal, valid, and effective transfer of the Property, and shall vest the Buyer with all of the Debtor's right, title, and interest in and to the Property, free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, with such liens, claims, encumbrances, and other interests to attach to the Sale Proceeds as set forth herein.

8. If any person or entity has filed financing statements, deeds of trust, mechanic's liens, lis pendens, or other documents or agreements evidencing liens against the Property and has not delivered to the Debtor, prior to Closing, termination statements, releases, or instruments of satisfaction in proper form for filing with respect to such liens, then (a) the Debtor or the title company closing the sale is authorized to execute and file such termination statements, releases,

and instruments on behalf of such person or entity, and (b) the Buyer is authorized to file, register, or record a certified copy of this Order, which, once filed, registered, or recorded, shall constitute conclusive evidence of the release of all such liens against the Property.

9. Following the Closing, no holder of any lien, claim, or encumbrance against the Property may interfere with the Buyer's use and enjoyment of the Property based upon or related to any such lien, claim, or encumbrance, and no party in interest may take any action to prevent, interfere with, or otherwise enjoin consummation of the sale.

10. To the extent the Debtor's objection, if any, to Prosperity Bank's proof of claim has not been resolved by agreement of the parties prior to Closing, the disputed portion of Prosperity Bank's claim shall be escrowed from the Sale Proceeds at Closing pending further order of this Court or written agreement of the Debtor and Prosperity Bank, with Prosperity Bank's lien attaching to such escrowed funds to the same extent, validity, and priority as existed against the Property immediately prior to Closing. Nothing in this Order shall constitute a determination or allowance of the amount, validity, or priority of Prosperity Bank's claim, and all rights and defenses of the Debtor, Prosperity Bank, and other parties in interest with respect thereto, including under 11 U.S.C. § 506(b), are expressly preserved.

11. The Lease between the Debtor and PIAP is REJECTED pursuant to 11 U.S.C. § 365, effective as of the Closing Date, and the Buyer shall be entitled to possession of the Property vacant of the Lease and PIAP's occupancy as of Closing. Any claim for damages arising from rejection of the Lease shall be treated as a prepetition unsecured claim against the Debtor's estate, subject to any applicable bar date and claims procedures in this case.

12. The sale of the Property has been undertaken by the Debtor and the Buyer at arm's length, without collusion, in good faith, and for value. The Buyer is hereby granted the protections

of a good faith purchaser under 11 U.S.C. § 363(m), and the reversal or modification on appeal of the authorization provided herein to sell the Property shall not affect the validity of the sale to the Buyer, unless such authorization is duly stayed pending such appeal.

13. The sale of the Property and the approval of the Contract providing for such sale may not be avoided, and shall not constitute grounds for the imposition or recovery of damages against the Buyer, under (a) 11 U.S.C. § 363(n); (b) the fraudulent transfer provisions of the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, or any similar law of any state whose law may be applicable to the Contract; or (c) any other provision of the Bankruptcy Code or applicable non-bankruptcy law.

14. Except as expressly set forth in the Contract and this Order, the Buyer shall not be liable or obligated for, and shall not assume or be responsible for, any liabilities or obligations of the Debtor, the Debtor's estate, or the Property (whether direct or indirect, liquidated or unliquidated, choate or inchoate, or contingent or fixed) arising before the Closing Date.

15. This Order shall be binding upon the Debtor, its estate, successors, and assigns, all creditors of and equity holders in the Debtor, and any and all other parties in interest, including, without limitation, all holders of liens, claims, encumbrances, and other interests of any kind or nature in the Property, and any trustee appointed in this case or upon any conversion to chapter 7. Nothing in any chapter 11 plan confirmed in this case, or any order confirming such a plan, shall conflict with or derogate from the provisions of this Order.

16. The fourteen (14)-day stay otherwise imposed by Bankruptcy Rules 6004(h) and 6006(d) is hereby waived, and this Order shall be effective and enforceable immediately upon entry, with its provisions self-executing, notwithstanding Bankruptcy Rules 6004(h) and 6006(d).

17. This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the Contract, including, without limitation, to: (a) compel delivery of the Property or performance of other obligations owed to the Buyer; (b) resolve any dispute regarding the allowed amount, validity, or priority of Prosperity Bank's claim and the disposition of any escrowed funds; (c) resolve any dispute arising from or related to the rejection of the Lease; and (d) interpret, implement, and enforce the provisions of this Order and the Contract.

Dated:

________________________________________

JEFFREY P. NORMAN
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT

A

TEXAS REALTORS®

# COMMERCIAL CONTRACT - IMPROVED PROPERTY

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2022

1. **PARTIES:** Seller agrees to sell and convey to Buyer the Property described in Paragraph 2. Buyer agrees to buy the Property from Seller for the sales price stated in Paragraph 3. The parties to this contract are:

   Seller: Rooted Enterprises LLC

   Address: 845
   Phone: ______ E-mail: ______
   Mobile: ______ Fax or Other: ______

   Buyer: Oscar and Donna Properties, LLC

   Address: PO Box 12407 College Station 77845
   Phone: ______ E-mail: o_ggalvan@hotmail.com
   Mobile: (210) 771-0720 Fax or Other: ______

2. **PROPERTY:**

   A. "Property" means that real property situated in Brazos County, Texas at 2775 Barron Rd, College Station, TX 77845 *(address)* and that is legally described on the attached Exhibit B or as follows:
   HARPER'S CROSSING, BLOCK 1, LOT 2

   B. Seller will sell and convey the Property together with:
   (1) all buildings, improvements, and fixtures;
   (2) all rights, privileges, and appurtenances pertaining to the Property, including Seller's right, title, and interest in any minerals, utilities, adjacent streets, alleys, strips, gores, and rights-of-way;
   (3) Seller's interest in all leases, rents, and security deposits for all or part of the Property;
   (4) Seller's interest in all licenses and permits related to the Property;
   (5) Seller's interest in all third party warranties or guaranties, if transferable, relating to the Property or any fixtures;
   (6) Seller's interest in any trade names, if transferable, used in connection with the Property; and
   (7) all Seller's tangible personal property located on the Property that is used in connection with the Property's operations except: ______.
   Any personal property not included in the sale must be removed by Seller prior to closing.

   *(Describe any exceptions, reservations, or restrictions in Paragraph 12 or an addendum.)*
   *(If mineral rights are to be reserved an appropriate addendum should be attached.)*
   *(If the Property is a condominium, attach Commercial Contract Condominium Addendum (TXR-1930) or (TXR-1946).)*

3. **SALES PRICE:** At or before closing, Buyer will pay the following sales price for the Property:

   A. Cash portion payable by Buyer at closing ............ $ 2,650,000
   B. Sum of all financing described in Paragraph 4 ............ $ 0
   C. Sales price (sum of 3A and 3B) ............ $ 2,650,000



Created with SkySlope® Forms 825 K Street, Sacramento, CA 95814 | Trinh Galvan, eXp Realty, LLC, 1716 Briarcrest Dr 3rd Floor, Bryan, TX 77802 (979) 450-1289

~~**4. FINANCING:** Buyer will finance the portion of the sales price under Paragraph 3B as follows:~~

~~❑ A. Third Party Financing: One or more third party loans in the total amount of $____________. This contract:~~

~~❑ (1) is not contingent upon Buyer obtaining third party financing.~~

~~❑ (2) is contingent upon Buyer obtaining third party financing in accordance with the attached Commercial Contract Financing Addendum (TXR-1931).~~

~~❑ B. Assumption: In accordance with the attached Commercial Contract Financing Addendum (TXR-1931), Buyer will assume the existing promissory note secured by the Property, which balance at closing will be $____________.~~

~~❑ C. Seller Financing: Buyer will deliver a promissory note and deed of trust to Seller under the terms of the attached Commercial Contract Financing Addendum (TXR-1931) in the amount of $____________.~~

**5. EARNEST MONEY:**

A. Not later than 3 days after the effective date, Buyer must deposit $ 25,000.00 as earnest money with Frontier Title (title company) at 1101 University Dr E, Ste 106, College Station, TX 77840 ;) ____________ (closer). If Buyer fails to timely deposit the earnest money, Seller may terminate this contract or exercise any of Seller's other remedies under Paragraph 15 by providing written notice to Buyer before Buyer deposits the earnest money. SEE EXHIBIT "A"

~~B. Buyer will deposit an additional amount of $____________ with the title company to be made part of the earnest money on or before:~~

~~❑ (i) ______ days after Buyer's right to terminate under Paragraph 7B expires; or~~

~~❑ (ii) ____________.~~

~~Buyer will be in default if Buyer fails to deposit the additional amount required by this Paragraph 5B within 3 days after Seller notifies Buyer that Buyer has not timely deposited the additional amount.~~

C. Buyer may instruct the title company to deposit the earnest money in an interest-bearing account at a federally insured financial institution and to credit any interest to Buyer.

**6. TITLE POLICY, SURVEY, AND UCC SEARCH:**

A. Title Policy:

(1) Seller, at Seller's expense, will furnish Buyer an Owner's Policy of Title Insurance (the title policy) issued by any underwriter of the title company in the amount of the sales price, dated at or after closing, insuring Buyer against loss under the title policy, subject only to:

(a) those title exceptions permitted by this contract or as may be approved by Buyer in writing; and

(b) the standard printed exceptions contained in the promulgated form of title policy unless this contract provides otherwise.

(2) The standard printed exception as to discrepancies, conflicts, or shortages in area and boundary lines, or any encroachments or protrusions, or any overlapping improvements:

☐ (a) will not be amended or deleted from the title policy.

☑ (b) will be amended to read "shortages in areas" at the expense of ☑ Buyer ❑ Seller.

(3) Within 7 days after the effective date, Seller will furnish Buyer a commitment for title insurance (the commitment) including legible copies of recorded documents evidencing title exceptions. Seller authorizes the title company to deliver the commitment and related documents to Buyer at Buyer's address.



Created with SkySlope® Forms 825 K Street, Sacramento, CA 95814 | Trinh Galvan, eXp Realty, LLC, 1716 Briarcrest Dr 3rd Floor, Bryan, TX 77802 (979) 450-1289

DigiSign Verified - 7d79e457-06c6-44fb-b63c-13e7b252ccb7



B. Survey: Within 7 days after the effective date:

❑ (1) Buyer will obtain a survey of the Property at Buyer's expense and deliver a copy of the survey to Seller. The survey must be made in accordance with the: (i) ALTA/NSPS Land Title Survey standards, or (ii) Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition. Seller will reimburse Buyer ____________ *(insert amount)* of the cost of the survey at closing, if closing occurs.

❑ (2) Seller, at Seller's expense, will furnish Buyer a survey of the Property dated after the effective date. The survey must be made in accordance with the: (i) ALTA/NSPS Land Title Survey standards, or (ii) Texas Society of Professional Surveyors' standards for a Category 1A survey under the appropriate condition.

☑ (3) Seller will deliver to Buyer and the title company a true and correct copy of Seller's most recent survey of the Property along with an affidavit required by the title company for approval of the existing survey. If the existing survey is not acceptable to the title company, ❑ Seller ☑ Buyer (updating party), will,at the updating party's expense, obtain a new or updated survey acceptable to the title company and deliver the acceptable survey to the other party and the title company within 30 days after the title company notifies the parties that the existing survey is not acceptable to the title company. The closing date will be extended daily up to 30 days if necessary for the updating party to deliver an acceptable survey within the time required. The other party will reimburse the updating party ____________ *(insert amount or percentage)* of the cost of the new or updated survey at closing, if closing occurs.

C. UCC Search:

☑ (1) Within 5 days after the effective date, Seller, at Seller's expense, will furnish Buyer a Uniform Commercial Code (UCC) search prepared by a reporting service and dated after the effective date. The search must identify documents that are on file with the Texas Secretary of State and the county where the Property is located that relate to all personal property on the Property and show, as debtor, Seller and all other owners of the personal property in the last 5 years.

❑ (2) Buyer does not require Seller to furnish a UCC search.

D. Buyer's Objections to the Commitment, Survey, and UCC Search:

(1) Within 8 days after Buyer receives the last of the commitment, copies of the documents evidencing the title exceptions, any required survey, and any required UCC search, Buyer may object to matters disclosed in the items if: (a) the matters disclosed are a restriction upon the Property or constitute a defect or encumbrance to title to the real or personal property described in Paragraph 2 other than those permitted by this contract or liens that Seller will satisfy at closing or Buyer will assume at closing; or (b) the items show that any part of the Property lies in a special flood hazard area (an "A" or "V" zone as defined by FEMA). If the commitment or survey is revised or any new document evidencing a title exception is delivered, Buyer may object to any new matter revealed in such revision or new document. Buyer's objection must be made within the same number of days stated in this paragraph, beginning when the revision or new document is delivered to Buyer. If Paragraph 6B(1) applies, Buyer is deemed to receive the survey on the earlier of: (i) the date Buyer actually receives the survey; or (ii) the deadline specified in Paragraph 6B.

(2) Seller may, but is not obligated to, cure Buyer's timely objections within 15 days after Seller receives the objections. The closing date will be extended as necessary to provide such time to cure the objections. If Seller fails to cure the objections by the time required, Buyer may terminate this contract by providing written notice to Seller within 5 days after the time by which Seller must cure the



Created with SkySlope® Forms 825 K Street, Sacramento, CA 95814 | Trinh Galvan, eXp Realty, LLC, 1716 Briarcrest Dr 3rd Floor, Bryan, TX 77802 (979) 450-1289

objections. If Buyer terminates, the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer.

(3) Buyer's failure to timely object or terminate under this Paragraph 6D is a waiver of Buyer's right to object except that Buyer will not waive the requirements in Schedule C of the commitment.

**7. PROPERTY CONDITION:**

A. Present Condition: Buyer accepts the Property in its present condition except that Seller, at Seller's expense, will complete the following before closing: ______________________________________________
______________________________________________________________________________.

B. Feasibility Period: Buyer may terminate this contract for any reason within 20 days after the effective date (feasibility period) by providing Seller written notice of termination.

(1) Independent Consideration. *(Check only one box and insert amounts.)*

☑ (a) If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer less $ 1,000.00 that Seller will retain as independent consideration for Buyer's unrestricted right to terminate. Buyer has tendered the independent consideration to Seller upon payment of the amount specified in Paragraph 5A to the title company. The independent consideration is to be credited to the sales price only upon closing of the sale. If no dollar amount is stated in this Paragraph 7B(1) or if Buyer fails to deposit the earnest money, Buyer will not have the right to terminate under this Paragraph 7B.

☐ (b) Not later than 3 days after the effective date, Buyer must pay $____________________ as independent consideration for Buyer's right to terminate by tendering such amount to the title company. Buyer authorizes escrow agent to release and deliver the independent consideration to Seller at any time upon Seller's request without further notice to or consent from Buyer. If Buyer terminates under this Paragraph 7B, the earnest money will be refunded to Buyer and Seller will retain the independent consideration. The independent consideration will be credited to the sales price only upon closing of the sale. If no dollar amount is stated in this Paragraph 7B(1)(b) or if Buyer fails to pay the independent consideration, Buyer will not have the right to terminate under this Paragraph 7B.

☐ (2) Feasibility Period Extension: Prior to the expiration of the initial feasibility period, Buyer may extend the feasibility period for a single additional period of _____ days by delivering $______________ to the title company as additional earnest money.

(a) $______________ of the additional earnest money will be retained by Seller as additional independent consideration for Buyer's unrestricted right to terminate, but will be credited to the sales price only upon closing of the sale. If Buyer terminates under this Paragraph 7B, the additional earnest money will be refunded to Buyer and Seller will retain the additional independent consideration.

(b) Buyer authorizes escrow agent to release and deliver to Seller the following at any time upon Seller's request without further notice to or consent from Buyer:
(i) The additional independent consideration.
(ii) *(Check no boxes or only one box.)*
☐ all or ☐ $______________ of the remaining portion of the additional earnest money, which will be refunded to Buyer if Buyer terminates under this Paragraph 7B or if Seller defaults under this contract.



Created with SkySlope® Forms 825 K Street, Sacramento, CA 95814 | Trinh Galvan, eXp Realty, LLC, 1716 Briarcrest Dr 3rd Floor, Bryan, TX 77802 (979) 450-1289

If no dollar amount is stated in this Paragraph 7B(2) as additional earnest money or as additional independent consideration, or if Buyer fails to timely deliver the additional earnest money, the extension of the feasibility period will not be effective.

C. Inspections, Studies, or Assessments:

(1) During the feasibility period, Buyer, at Buyer's expense, may complete or cause to be completed any and all inspections, studies, or assessments of the Property (including all improvements and fixtures) desired by Buyer.

(2) Seller, at Seller's expense, will turn on all utilities necessary for Buyer to make inspections, studies, or assessments.

(3) Buyer must:
(a) employ only trained and qualified inspectors and assessors;
(b) notify Seller, in advance, of when the inspectors or assessors will be on the Property;
(c) abide by any reasonable entry rules or requirements of Seller;
(d) not interfere with existing operations or occupants of the Property; and
(e) restore the Property to its original condition if altered due to inspections, studies, or assessments that Buyer completes or causes to be completed.

(4) Except for those matters that arise from the negligence of Seller or Seller's agents, Buyer is responsible for any claim, liability, encumbrance, cause of action, and expense resulting from Buyer's inspections, studies, or assessments, including any property damage or personal injury. Buyer will indemnify, hold harmless, and defend Seller and Seller's agents against any claim involving a matter for which Buyer is responsible under this paragraph. This paragraph survives termination of this contract.

D. Property Information:

(1) Delivery of Property Information: Within 5 days after the effective date, Seller will deliver to Buyer the following to the extent in Seller's possession: *(Check all that apply.)*

- ☐ (a) a current rent roll of all leases affecting the Property certified by Seller as true and correct;
- ☐ (b) copies of all current leases, including any mineral leases, pertaining to the Property, including any modifications, supplements, or amendments to the leases;
- ☑ (c) a current inventory of all personal property to be conveyed under this contract and copies of any leases for such personal property;
- ☑ (d) copies of all notes and deeds of trust against the Property that Buyer will assume or that Seller will not pay in full on or before closing;
- ☑ (e) copies of all current service, utility, maintenance, and management agreements relating to the ownership and operation of the Property;
- ☑ (f) copies of current utility capacity letters from the Property's water and sewer service provider;
- ☑ (g) copies of all current warranties and guaranties relating to all or part of the Property;
- ☑ (h) copies of fire, hazard, liability, and other insurance policies that currently relate to the Property;
- ☐ (i) copies of all leasing or commission agreements that currently relate to the tenants of all or part of the Property;
- ☑ (j) a copy of the "as-built" plans and specifications and plat of the Property;
- ☐ (k) copies of all invoices for utilities and repairs incurred by Seller for the Property in the 24 months immediately preceding the effective date;
- ☐ (l) a copy of Seller's income and expense statement for the Property from ____________ to ____________;
- ☑ (m) copies of all previous environmental assessments, geotechnical reports, studies, or analyses made on or relating to the Property;



Created with SkySlope® Forms 825 K Street, Sacramento, CA 95814 | Trinh Galvan, eXp Realty, LLC, 1716 Briarcrest Dr 3rd Floor, Bryan, TX 77802 (979) 450-1289

☑ (n) real and personal property tax statements for the Property for the previous 2 calendar years;
☐ (o) Tenant reconciliation statements including, operating expenses, insurance and taxes for the Property from ________________ to ______________________________; and
☒ (p) COPIES OF OCCUPANCY CERTIFICATES

(2) Return of Property Information: If this contract terminates for any reason, Buyer will, not later than 10 days after the termination date: *(Check all that apply.)*
☐ (a) return to Seller all those items described in Paragraph 7D(1) that Seller delivered to Buyer inother than an electronic format and all copies that Buyer made of those items;
☐ (b) delete or destroy all electronic versions of those items described in Paragraph 7D(1) that Seller delivered to Buyer or Buyer copied in any format; and
☐ (c) deliver to Seller copies of all inspection and assessment reports related to the Property that Buyer completed or caused to be completed.
This Paragraph 7D(2) survives termination of this contract.

E. Contracts Affecting Operations: Until closing, Seller: (1) will operate the Property in the same manner as on the effective date under reasonably prudent business standards; and (2) will not transfer or dispose of any part of the Property, any interest or right in the Property, or any of the personal property or other items described in Paragraph 2B or sold under this contract. After the feasibility period ends, Seller may not enter into, amend, or terminate any other contract that affects the operations of the Property without Buyer's written approval.

~~8. LEASES:~~

~~A. Each written lease Seller is to assign to Buyer under this contract must be in full force and effect according to its terms. Seller may not enter into any new lease, fail to comply with any existing lease, or make any amendment or modification to any existing lease without Buyer's written consent. Seller must disclose, in writing, if any of the following exist at the time Seller provides the leases to the Buyer or subsequently occur before closing:~~
~~(1) any failure by Seller to comply with Seller's obligations under the leases;~~
~~(2) any circumstances under any lease that entitle the tenant to terminate the lease or seek any offsets or damages;~~
~~(3) any non-occupancy of the leased premises by a tenant;~~
~~(4) any advance sums paid by a tenant under any lease;~~
~~(5) any concessions, bonuses, free rents, rebates, brokerage commissions, or other matters that affect any lease; and~~
~~(6) any amounts payable under the leases that have been assigned or encumbered, except as security for loan(s) assumed or taken subject to under this contract.~~

~~B. Estoppel Certificates: Within ________ days after the effective date, Seller will deliver to Buyer estoppel certificates signed not earlier than ______________________ by each tenant that leases space in the Property. The estoppel certificates must include the certifications contained in the current version of TXR Form 1938 – Commercial Tenant Estoppel Certificate and any additional information requested by a third party lender providing financing under Paragraph 4 if the third party lender requests such additional information at least 10 days prior to the earliest date that Seller may deliver the signed estoppel certificates.~~



Created with SkySlope® Forms 825 K Street, Sacramento, CA 95814 | Trinh Galvan, eXp Realty, LLC, 1716 Briarcrest Dr 3rd Floor, Bryan, TX 77802 (979) 450-1289

## 9. BROKERS:

A. The brokers to this sale are:

**Principal Broker:** LKG REALTY ADVISORS

Agent: RICK LEMMONS, CCIM

Address: 

Phone & Fax: 979.221.2929

E-mail: RLEMONS@LKGRA.COM

License No.: 524312

Principal Broker: *(Check only one box)*
- ☑ represents Seller only.
- ☐ represents Buyer only.
- ☐ is an intermediary between Seller and Buyer.

**Cooperating Broker:** EXP REALTY

Agent: TRINH GALVAN

Address: 

Phone & Fax: 979-450-1289

E-mail: TRINHGALVAN@GMAIL.COM

License No.: 768203

Cooperating Broker represents Buyer.

B. Fees: *(Check only (1) or (2) below.)*
*(Complete the Agreement Between Brokers on page 15 only if (1) is selected.)*

☐ (1) Seller will pay Principal Broker the fee specified by separate written commission agreement between Principal Broker and Seller. Principal Broker will pay Cooperating Broker the fee specified in the Agreement Between Brokers found below the parties' signatures to this contract.

☑ (2) At the closing of this sale, Seller will pay:

Principal Broker a total cash fee of:
- ☒ 2.5% % of the sales price.
- ☐ ______.

Cooperating Broker a total cash fee of:
- ☑ 3 % of the sales price.
- ☐ ______.

The cash fees will be paid in BRAZOS County, Texas. Seller authorizes the title company to pay the brokers from the Seller's proceeds at closing.

*NOTICE: Chapter 62, Texas Property Code, authorizes a broker to secure an earned commission with a lien against the Property.*

C. The parties may not amend this Paragraph 9 without the written consent of the brokers affected by the amendment.

## 10. CLOSING:

A. The date of the closing of the sale (closing date) will be on or before the later of:
(1) ☐ ______ days after the expiration of the feasibility period.
☒ August 25, 2026 *(specific date)*.
☐ ______.
(2) 7 days after objections made under Paragraph 6D have been cured or waived.

B. If either party fails to close by the closing date, the non-defaulting party may exercise the remedies in Paragraph 15.



Created with SkySlope® Forms 825 K Street, Sacramento, CA 95814 | Trinh Galvan, eXp Realty, LLC, 1716 Briarcrest Dr 3rd Floor, Bryan, TX 77802 (979) 450-1289

C. At closing, Seller will execute and deliver to Buyer, at Seller's expense, a ☑ general ☐ special warranty deed. The deed must include a vendor's lien if any part of the sales price is financed. The deed must convey good and indefeasible title to the Property and show no exceptions other than those permitted under Paragraph 6 or other provisions of this contract. Seller must convey the Property:
(1) with no liens, assessments, or Uniform Commercial Code or other security interests against the Property which will not be satisfied out of the sales price, unless securing loans Buyer assumes;
(2) without any assumed loans in default; and
(3) with no persons in possession of any part of the Property as lessees, tenants at sufferance, or trespassers except tenants under the written leases assigned to Buyer under this contract.

D. At closing, Seller, at Seller's expense, will also deliver to Buyer:
(1) tax statements showing no delinquent taxes on the Property;
(2) a bill of sale with warranties to title conveying title, free and clear of all liens, to any personal property defined as part of the Property in Paragraph 2 or sold under this contract;
(3) an assignment of all leases to or on the Property;
(4) to the extent that the following items are assignable, an assignment to Buyer of the following items as they relate to the Property or its operations:
(a) licenses and permits;
(b) service, utility, maintenance, management, and other contracts; and
(c) warranties and guaranties;
(5) a rent roll current on the day of the closing certified by Seller as true and correct;
(6) evidence that the person executing this contract is legally capable and authorized to bind Seller;
(7) an affidavit acceptable to the title company stating that Seller is not a foreign person or, if Seller is a foreign person, a written authorization for the title company to: (i) withhold from Seller's proceeds an amount sufficient to comply with applicable tax law; and (ii) deliver the amount to the Internal Revenue Service together with appropriate tax forms; and
(8) any notices, statements, certificates, affidavits, releases, and other documents required by this contract, the commitment, or law necessary for the closing of the sale and the issuance of the title policy, all of which must be completed and executed by Seller as necessary.

E. At closing, Buyer will:
(1) pay the sales price in good funds acceptable to the title company;
(2) deliver evidence that the person executing this contract is legally capable and authorized to bind Buyer;
(3) sign and send to each tenant in the Property a written statement that:
(a) acknowledges Buyer has received and is responsible for the tenant's security deposit; and
(b) specifies the exact dollar amount of the security deposit;
(4) sign an assumption of all leases then in effect; and
(5) execute and deliver any notices, statements, certificates, or other documents required by this contract or law necessary to close the sale.

F. Unless the parties agree otherwise, the closing documents will be as found in the basic forms in the current edition of the State Bar of Texas Real Estate Forms Manual without any additional clauses.

11. **POSSESSION:** Seller will deliver possession of the Property to Buyer upon closing and funding of this sale in its present condition with any repairs Seller is obligated to complete under this contract, ordinary wear and tear excepted. Any possession by Buyer before closing or by Seller after closing that is not authorized by a separate written lease agreement is a landlord-tenant at sufferance relationship between the parties.

**12. SPECIAL PROVISIONS:** The following special provisions apply and will control in the event of a conflict with other provisions of this contract. *(If special provisions are contained in an Addendum, identify the Addendum here and reference the Addendum in Paragraph 22D.)*

SEE EXHIBIT A,

**13. SALES EXPENSES:**

A. Seller's Expenses: Seller will pay for the following at or before closing:
(1) releases of existing liens, other than those liens assumed by Buyer, including prepayment penalties and recording fees;
(2) release of Seller's loan liability, if applicable;
(3) tax statements or certificates;
(4) preparation of the deed and any bill of sale;
(5) one-half of any escrow fee;
(6) costs to record any documents to cure title objections that Seller must cure; and
(7) other expenses that Seller will pay under other provisions of this contract.

B. Buyer's Expenses: Buyer will pay for the following at or before closing:
(1) all loan expenses and fees;
(2) preparation fees of any deed of trust;
(3) recording fees for the deed and any deed of trust;
(4) premiums for flood and hazard insurance as may be required by Buyer's lender;
(5) one-half of any escrow fee; and
(6) other expenses that Buyer will pay under other provisions of this contract.

**14. PRORATIONS:**

A. Prorations:
(1) Interest on any assumed loan, taxes, rents, and any expense reimbursements from tenants will be prorated through the closing date.
(2) If the amount of ad valorem taxes for the year in which the sale closes is not available on the closing date, taxes will be prorated on the basis of taxes assessed in the previous year. If the taxes for the year in which the sale closes vary from the amount prorated at closing, the parties will adjust the prorations when the tax statements for the year in which the sale closes become available. This Paragraph 14A(2) survives closing.
(3) If Buyer assumes a loan or is taking the Property subject to an existing lien, Seller will transfer all reserve deposits held by the lender for the payment of taxes, insurance premiums, and other charges to Buyer at closing and Buyer will reimburse such amounts to Seller by an appropriate adjustment at closing.

B. Rollback Taxes: If Seller's use or change in use of the Property before closing results in the assessment of additional taxes, penalties, or interest (assessments) for periods before closing, the assessments will be the obligation of Seller. If this sale or Buyer's use of the Property after closing results in additional assessments for periods before closing, the assessments will be the obligation of Buyer. This Paragraph 14B survives closing.

C. Rent and Security Deposits: At closing, Seller will tender to Buyer all security deposits and the following advance payments received by Seller for periods after closing: prepaid expenses, advance rental payments, and other advance payments paid by tenants. Rents prorated to one party but received by the other party will be remitted by the recipient to the party to whom it was prorated within 5 days after the rent is received. This Paragraph 14C survives closing. SEE EXHIBIT "A"

**15. DEFAULT:**

A. If Buyer fails to comply with this contract, Buyer is in default and Seller, as Seller's sole remedy(ies), may terminate this contract and receive the earnest money, as liquidated damages for Buyer's failure except for any damages resulting from Buyer's inspections, studies or assessments in accordance with Paragraph 7C(4) which Seller may pursue, or
*(Check if applicable)*
❑ enforce specific performance, or seek such other relief as may be provided by law.

B. If, without fault, Seller is unable within the time allowed to deliver the estoppel certificates, survey or the commitment, Buyer may:
(1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as liquidated damages and as Buyer's sole remedy; or
(2) extend the time for performance up to 15 days and the closing will be extended as necessary.

C. Except as provided in Paragraph 15B, if Seller fails to comply with this contract, Seller is in default and Buyer may:
(1) terminate this contract and receive the earnest money, less any independent consideration under Paragraph 7B(1), as liquidated damages and as Buyer's sole remedy; or
(2) enforce specific performance, or seek such other relief as may be provided by law, or both.

**16. CASUALTY LOSS AND CONDEMNATION:**

A. If any part of the Property is damaged or destroyed by fire or other casualty after the effective date, Seller must restore the Property to its previous condition as soon as reasonably possible and not later than the closing date. If, without fault, Seller is unable to do so, Buyer may:

(1) terminate this contract and the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer;
(2) extend the time for performance up to 15 days and closing will be extended as necessary; or
(3) accept at closing: (i) the Property in its damaged condition; (ii) an assignment of any insurance proceeds Seller is entitled to receive along with the insurer's consent to the assignment; and (iii) a credit to the sales price in the amount of any unpaid deductible under the policy for the loss.

B. If before closing, condemnation proceedings are commenced against any part of the Property, Buyer may:
(1) terminate this contract by providing written notice to Seller within 15 days after Buyer is advised of the condemnation proceedings and the earnest money, less any independent consideration under Paragraph 7B(1), will be refunded to Buyer; or
(2) appear and defend the condemnation proceedings and any award will, at Buyer's election, belong to: (a) Seller and the sales price will be reduced by the same amount; or (b) Buyer and the sales price will not be reduced.

**17. ATTORNEY'S FEES:** If Buyer, Seller, any broker, or the title company is a prevailing party in any legal proceeding brought under or with relation to this contract or this transaction, such party is entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorney's fees. This Paragraph 17 survives termination of this contract.

**18. ESCROW:**

A. At closing, the earnest money will be applied first to any cash down payment, then to Buyer's closing costs, and any excess will be refunded to Buyer. If no closing occurs, the title company may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of the title company from all parties.

B. If one party makes written demand for the earnest money, the title company will give notice of the demand by providing to the other party a copy of the demand. If the title company does not receive written objection to the demand from the other party within 15 days after the date the title company sent the demand to the other party, the title company may disburse the earnest money to the party making demand, reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and the title company may pay the same to the creditors.

C. The title company will deduct any independent consideration under Paragraph 7B(1) before disbursing any earnest money to Buyer and will pay the independent consideration to Seller.

D. If the title company complies with this Paragraph 18, each party hereby releases the title company from all claims related to the disbursal of the earnest money.

E. Notices under this Paragraph 18 must be sent by certified mail, return receipt requested. Notices to the title company are effective upon receipt by the title company.

F. Any party who wrongfully fails or refuses to sign a release acceptable to the title company within 7 days after receipt of the request will be liable to the other party for: (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

G. ☐ Seller ☐ Buyer intend(s) to complete this transaction as a part of an exchange of like-kind properties in accordance with Section 1031 of the Internal Revenue Code, as amended. All expenses in connection with the contemplated exchange will be paid by the exchanging party. The other party will not incur any expense or liability with respect to the exchange. The parties agree to cooperate fully and in good faith to arrange and consummate the exchange so as to comply to the maximum extent feasible with the provisions of Section 1031 of the Internal Revenue Code. The other provisions of this contract will not be affected in the event the contemplated exchange fails to occur.

**19. MATERIAL FACTS:** To the best of Seller's knowledge and belief: *(Check only one box.)*

☑ A. Seller is not aware of any material defects to the Property except as stated in the attached Commercial Property Condition Statement (TXR-1408).

☐ B. Except as otherwise provided in this contract, Seller is not aware of:
- (1) any subsurface: structures, pits, waste, springs, or improvements;
- (2) any pending or threatened litigation, condemnation, or assessment affecting the Property;
- (3) any environmental hazards or conditions that materially affect the Property;
- (4) whether the Property is or has been used for the storage or disposal of hazardous materials or toxic waste, a dump site or landfill, or any underground tanks or containers;
- (5) whether radon, asbestos containing materials, urea-formaldehyde foam insulation, lead-based paint, toxic mold (to the extent that it adversely affects the health of ordinary occupants), or other pollutants or contaminants of any nature now exist or ever existed on the Property;
- (6) any wetlands, as defined by federal or state law or regulation, on the Property;
- (7) any threatened or endangered species or their habitat on the Property;
- (8) any present or past infestation of wood-destroying insects in the Property's improvements;
- (9) any contemplated material changes to the Property or surrounding area that would materially and detrimentally affect the ordinary use of the Property;



Created with SkySlope® Forms 825 K Street, Sacramento, CA 95814 | Trinh Galvan, eXp Realty, LLC, 1716 Briarcrest Dr 3rd Floor, Bryan, TX 77802 (979) 450-1289

(10) any material physical defects in the improvements on the Property; or
(11) any condition on the Property that violates any law or ordinance.

*(Describe any exceptions to (1)-(11) in Paragraph 12 or an addendum.)*

**20. NOTICES:** All notices between the parties under this contract must be in writing and are effective when hand-delivered, mailed by certified mail return receipt requested, sent by a national or regional overnight delivery service that provides a delivery receipt, or sent by confirmed facsimile transmission to the parties addresses or facsimile numbers stated in Paragraph 1. The parties will send copies of any notices to the broker representing the party to whom the notices are sent.

☑ A. Seller also consents to receive any notices by e-mail at Seller's e-mail address stated in Paragraph 1.
☑ B. Buyer also consents to receive any notices by e-mail at Buyer's e-mail address stated in Paragraph 1.

**21. DISPUTE RESOLUTION:** The parties agree to negotiate in good faith in an effort to resolve any dispute related to this contract that may arise. If the dispute cannot be resolved by negotiation, the parties will submit the dispute to mediation before resorting to arbitration or litigation and will equally share the costs of a mutually acceptable mediator. This paragraph survives termination of this contract. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**22. AGREEMENT OF THE PARTIES:**

A. This contract is binding on the parties, their heirs, executors, representatives, successors, and permitted assigns. This contract is to be construed in accordance with the laws of the State of Texas. If any term or condition of this contract shall be held to be invalid or unenforceable, the remainder of this contract shall not be affected thereby. All individuals signing represent that they have the authority to sign on behalf of and bind the party for whom they are signing.

B. This contract contains the entire agreement of the parties and may not be changed except in writing.

C. If this contract is executed in a number of identical counterparts, each counterpart is an original and all counterparts, collectively, constitute one agreement.

D. Addenda which are part of this contract are: *(Check all that apply.)*
☑ (1) Property Description Exhibit identified in Paragraph 2;
☐ (2) Commercial Contract Condominium Addendum (TXR-1930) or (TXR-1946);
☐ (3) Commercial Contract Financing Addendum (TXR-1931);
☑ (4) Commercial Property Condition Statement (TXR-1408);
☐ (5) Commercial Contract Addendum for Special Provisions (TXR-1940);
☐ (6) Addendum for Seller's Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (TXR-1906);
☐ (7) Notice to Purchaser of Real Property in a Water District (MUD);
☐ (8) Addendum for Coastal Area Property (TXR-1915);
☐ (9) Addendum for Property Located Seaward of the Gulf Intracoastal Waterway (TXR-1916);
☐ (10) Information About Brokerage Services (TXR-2501;
☐ (11) Information About Mineral Clauses in Contract Forms (TXR-2509);
☐ (12) Notice of Obligation to Pay Improvement District Assessment (TXR-1955, PID);
☑ (13) **EXHIBIT A,** ______________________________ .

*(Note: Counsel for Texas REALTORS® has determined that any of the foregoing addenda which are promulgated by the Texas Real Estate Commission (TREC) or published by Texas REALTORS® are appropriate for use with this form.)*



Created with SkySlope® Forms 825 K Street, Sacramento, CA 95814 | Trinh Galvan, eXp Realty, LLC, 1716 Briarcrest Dr 3rd Floor, Bryan, TX 77802 (979) 450-1289

E. Buyer ☑ may ☐ may not assign this contract. If Buyer assigns this contract, Buyer will be relieved of any future liability under this contract only if the assignee assumes, in writing, all of Buyer's obligations under this contract.

**23. TIME:** Time is of the essence in this contract. The parties require strict compliance with the times for performance. If the last day to perform under a provision of this contract falls on a Saturday, Sunday, or Federal Reserve Bank holiday, the time for performance is extended until the end of the next day which is not a Saturday, Sunday,or Federal Reserve Bank holiday.

**24. EFFECTIVE DATE:** The effective date of this contract for the purpose of performance of all obligations is the date the title company receipts this contract after all parties execute this contract.

**25. ADDITIONAL NOTICES:**

A. Buyer should have an abstract covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a title policy.

B. If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fees of the district before final execution of this contract.

C. Notice Required by §13.257, Water Code: "The real property, described below, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you willbe required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned purchaser hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in the notice or at closing of purchase of the real property." The real property is described in Paragraph 2 of this contract.

D. If the Property adjoins or shares a common boundary with the tidally influenced submerged lands of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included as part of this contract *(the Addendum for Coastal Area Property (TXR-1915) may be used)*.

E. If the Property is located seaward of the Gulf Intracoastal Waterway, §61.025, Texas Natural Resources Code, requires a notice regarding the seaward location of the Property to be included as part of this contract *(the Addendum for Property Located Seaward of the Gulf Intracoastal Waterway (TXR-1916) may be used)*.

F. If the Property is located outside the limits of a municipality, the Property may now or later be included in the extra-territorial jurisdiction (ETJ) of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and ETJ. To determine if the Property is located within a municipality's ETJ, Buyer should contact all municipalities located in the general proximity of the Property for further information.

G. If apartments or other residential units are on the Property and the units were built before 1978, federal law requires a lead-based paint and hazard disclosure statement to be made part of this contract *(the Addendum for Seller's Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (TXR-1906) may be used)*.



Created with SkySlope® Forms 825 K Street, Sacramento, CA 95814 | Trinh Galvan, eXp Realty, LLC, 1716 Briarcrest Dr 3rd Floor, Bryan, TX 77802 (979) 450-1289

H. Section 1958.154, Occupations Code requires Seller to provide Buyer a copy of any mold remediation certificate issued for the Property during the 5 years preceding the date the Seller sells the Property.

I. Brokers are not qualified to perform property inspections, surveys, engineering studies, environmental assessments, or inspections to determine compliance with zoning, governmental regulations, or laws. Buyer should seek experts to perform such services. Buyer should review local building codes, ordinances and other applicable laws to determine their effect on the Property. Selection of experts, inspectors, and repairmen is the responsibility of Buyer and not the brokers. Brokers are not qualified to determine the credit worthiness of the parties. NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for variousreasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

J. PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, Seller is required by §5.014, Property Code to give Buyer a written notice concerning the obligation to pay assessments. The form of the required notice is available as a part of the Notice of Obligation to Pay Improvement District Assessment (TXR-1955).

K. LICENSE HOLDER DISCLOSURE: Texas law requires a real estate license holder who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the license holder owns more than 10%, or a trust for which the license holder acts as a trustee or of which the license holder or the license holder's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: ______________________
______________________.

**26. CONTRACT AS OFFER:** The execution of this contract by the first party constitutes an offer to buy or sell the Property. Unless the other party accepts the offer by 5:00 p.m., in the time zone in which the Property is located, on ______________________, the offer will lapse and become null and void.

**READ THIS CONTRACT CAREFULLY. The brokers and agents make no representation or recommendation as to the legal sufficiency, legal effect, or tax consequences of this document or transaction. CONSULT your attorney BEFORE signing.**

| Seller | Buyer |
|---|---|
| **Seller**: Rooted Enterprises LLC | **Buyer**: Oscar and Donna Properties, LLC |
| By: Rooted Enterprises LLC | By: Oscar and Donna Properties, LLC |
| By (signature): AuthentiSIGN Stephanie Shoemake | By (signature): |
| Printed Name: Stephanie Shoemake | Printed Name: |
| Title: Owner | Title: |
| By: | By: |
| By (signature): | By (signature): |
| Printed Name: | Printed Name: |
| Title: | Title: |



Created with SkySlope® Forms 825 K Street, Sacramento, CA 95814 | Trinh Galvan, eXp Realty, LLC, 1716 Briarcrest Dr 3rd Floor, Bryan, TX 77802 (979) 450-1289

## AGREEMENT BETWEEN BROKERS

*(use only if Paragraph 9B(1) is effective)*

Principal Broker agrees to pay ______________________ (Cooperating Broker) a fee when the Principal Broker's fee is received. The fee to be paid to Cooperating Broker will be:

- ❑ $________________, or
- ☑ 3 % of the sales price, or
- ❑ ______% of the Principal Broker's fee.

The title company is authorized and directed to pay Cooperating Broker from Principal Broker's fee at closing. This Agreement Between Brokers supersedes any prior offers and agreements for compensation between brokers.

Principal Broker: Rick Lemons

By: ______________________

Cooperating Broker: Trinh Galvan

By: ______________________

## ATTORNEYS

Seller's attorney: Melissa Hasselden

Address: Houston
Texas

Phone & Fax: 713-459-5339

Email: mhaselden@haseldenfarrow.

Seller's attorney requests copies of documents, notices, and other information:

- ❑ the title company sends to Seller.
- ❑ Buyer sends to Seller

Buyer's attorney: Patrick Murphy

Address: 2525 North Loop W, Suite 250
Houston, Texas 77008

Phone & Fax: 713-960-8895

Email: patrick@murphyslawtx.com

Buyer's attorney requests copies of documents, notices, and other information:

- ❑ the title company sends to Buyer.
- ❑ Seller sends to Buyer

## ESCROW RECEIPT

The title company acknowledges receipt of:

- ❑ A. the contract on this day ______________________(effective date);
- ❑ B. earnest money in the amount of $________ in the form of ____________ on ________.

Title company: ______________________

By: ______________________

Assigned file number (GF#): ______________

Address: ______________________

Phone & Fax: ______________________

E-mail: ______________________



Created with SkySlope® Forms 825 K Street, Sacramento, CA 95814 | Trinh Galvan, eXp Realty, LLC, 1716 Briarcrest Dr 3rd Floor, Bryan, TX 77802 (979) 450-1289

**EXHIBIT "A"**

**1. Definitions; Conflict:**

The "Contract" means the Commercial Contract – Improved Property between ROOTED ENTERPRISE, LLC, as Seller, and OSCAR AND DONNA PROPERTIES, LLC, as Buyer, for the property at 2775 Barron Rd, College Station, Texas 77845, to which this Exhibit "A" is attached. Capitalized terms not defined here have the meaning given in the Contract. If this Exhibit "A" conflicts with the Contract, this Exhibit "A" controls. Seller's obligations are conditioned on entry of the Sale Order (defined in Section 31), and nothing here limits 11 U.S.C. §§ 363 or 365 or any order of the Bankruptcy Court.

**3. Addition to Section 14.**

A new Section 14.D is added: prorations will be made at Closing on the best available information, with any needed adjustment reconciled within ninety (90) days after Closing and any resulting payment made within thirty (30) days after that. The reconciled prorations become final absent material mistake of fact. This survives Closing. Because the Lease will be rejected before or at Closing, there are no post-closing lease adjustments; "adjustments" here means only ad valorem taxes, rents, and operating expenses accrued through the Closing Date. Seller will give Buyer reasonable post-closing access to its records on those items, limited to records in Seller's possession as of Closing and subject to the Bankruptcy Court's and U.S. Trustee's oversight of estate records.

**4. New Section 27. Representations and Warranties of Seller.**

Seller hereby represents and warrants to Buyer, subject to the qualifications set forth in Section 31(j) and conditioned upon entry of the Sale Order:

**(a) Authority.** Seller has full authority to enter into the Contract and convey the Property, subject to Bankruptcy Court approval and entry of the Sale Order under 11 U.S.C. § 363.

**(b) Enforceability.** The Contract, once executed, is a valid and binding obligation of Seller, enforceable in accordance with its terms, subject to entry of the Sale Order and to Bankruptcy Court approval.

**(c) Conflict/Breach.** Except as disclosed in Section 27 (c), (e) and (f), entering into and performing the Contract will not breach or default under any agreement binding Seller or the Property. Seller discloses: (i) Seller is in default under the Prosperity Bank note and deed of trust, the default that precipitated the Bankruptcy Case; the Prosperity lien will be paid in full at Closing from sale proceeds. (ii) Seller is in default under the SBA 504 loan serviced by North Texas Certified Development Corporation; net proceeds will not be sufficient to pay the SBA's second priority lien securing the loan (the "SBA Lien") in full. The SBA Lien will instead be extinguished under 11 U.S.C. § 363(f) by the Sale Order, with the SBA Lien attaching to any net proceeds remaining after senior obligations, in priority order. Seller's inability to pay the SBA Lien in full does not breach this Contract, provided the Sale Order authorizes the sale free and clear of the SBA Lien under § 363(f).

**(d) Pending Actions.** Except as disclosed in Section 27 (c), (e) and (f), there is no action, suit, arbitration, unsatisfied order or judgment, governmental investigation or proceeding pending against the Property or against Seller related to the Property, and to Seller's knowledge, no such proceedings are threatened or contemplated. Seller discloses: (i) the Bankruptcy Case, In re Rooted Enterprise, LLC, Case No. 26-33356 (Bankr. S.D. Tex.); (ii) the state-court action

DigiSign Verified - d4b671fa-45a8-4cd7-9808-576378a4e362


Prosperity Bank v. Rooted Enterprises, LLC et al., Cause No. 25-000308-CV-85, 85th Judicial District Court, Brazos County, Texas, stayed as to Seller under 11 U.S.C. § 362(a); (iii) this case is designated Single Asset Real Estate under 11 U.S.C. § 101(51B), which requires Seller, under § 362(d)(3), to either file a plan with a reasonable possibility of confirmation or begin non-default-rate monthly payments to Prosperity, or risk stay relief and foreclosure; (iv) the Bankruptcy Court has entered the Agreed Order on Continued Use of Cash Collateral [Doc. No. 49], which conditions the automatic stay on, among other things, Seller entering into a binding contract for sale of the Property by September 30, 2026 and closing by October 30, 2026. None of these disclosed matters constitutes a breach of this representation. Except as disclosed in Section 27 (c), (e) and (f), none of the foregoing will materially impair the transactions set forth herein or expose Buyer to any obligations or liabilities.

**(e) Title.** Seller holds fee title, subject to entry of the Sale Order and the following, each resolved at Closing: (i) the Prosperity first lien paid in full from proceeds; (ii) the 2025 ad valorem tax lien, estimated at approximately $68,000.00 but subject to a current payoff to be obtained from the taxing authority before Closing, paid in full from proceeds; and (iii) the SBA Lien extinguished under § 363(f) and released of record, with the SBA Lien attaching to any proceeds remaining after (i) and (ii) and closing costs, since net proceeds are insufficient to pay it in full. No agreement or encumbrance will bind Buyer or grant anyone a right of possession or use after Closing, including any event booking, venue reservation, rental agreement, or license for use of any portion of the Property, including the venue space that has been marketed as "The Grove BCS Event Space".

**(f) Leases.** The Property is leased to BCS Peas In A Pod Learning Center, LLC under a Triple Net Lease dated August 29, 2022 (the "Lease"). Buyer will not assume the Lease, and it will not survive Closing. Seller will seek Bankruptcy Court approval to reject the Lease under 11 U.S.C. § 365 and will deliver the Property vacant at Closing. All prepetition rent arrears owed by Tenant remain assets of the estate and are excluded from the sale; Buyer has no interest in them. Buyer acknowledges Tenant and Seller share common management, which will be disclosed to and reviewed by the Bankruptcy Court in connection with the Sale Order. Tenant has, from time to time operated an event business in the space (the "Venue Use"). Tenant will cease operating the Venue Use, and all bookings, reservations, licenses, and customer deposits associated with the Venue Use will be terminated, refunded, or otherwise resolved, before the Closing Date, at no cost to Buyer. None of the foregoing will bind Buyer or the Property after Closing.

**(g) Property Agreements.** There are no contracts or agreements affecting the Property that will survive Closing, subject to entry of the Sale Order, and no uncured defaults except as disclosed in Section 27 (c), (e) and (f) and the Bankruptcy Case. Except as disclosed in Section 27 (c), (e) and (f), no uncured defaults will materially impair the transactions set forth herein or expose Buyer to any obligations or liabilities.

**(h) Taxes and Assessments.** Approximately $68,000.00 in 2025 ad valorem taxes, plus accrued penalties and interest, are outstanding, or such greater amount as reflected in a current tax payoff obtained from the taxing authority before Closing, and will be paid in full at Closing from sale proceeds under the Sale Order. No other material taxes or assessments are due other than 2026 ad valorem property taxes, prorated as of Closing under Paragraph 14. Except as disclosed in Section 27 (c), (e) and (f), there are no other known tax matters which would materially impair the transactions set forth herein or expose Buyer to any obligations or liabilities.

**(i) Condemnation.** No condemnation proceedings relating to the Property are pending or threatened.

**(j) No Violations.** Neither Seller nor its owners, managers, or officers has received any governmental notice that the Property violates any law or regulation, including environmental,

drainage, licensing, or permitting requirements. Childcare licensing, permitting, and fire-inspection requirements are Tenant's operational responsibility, not Seller's, and do not breach this representation. Except as disclosed in Section 27 (c), (e) and (f), there are no known matters related to the above that will materially impair the transactions set forth herein or expose Buyer to any obligations or liabilities.

**(k) Environmental Matters.** To Seller's knowledge, no portion of the Property contains hazardous substances (including asbestos, lead-based paint, or radon) in violation of environmental law, no underground storage tanks have been installed or removed, and the Property has not been used to store, generate, or dispose of hazardous substances or as a waste dump. Seller has received no notice of any environmental violation or governmental inquiry regarding the Property. Except as disclosed in Section 27 (c), (e) and (f), Seller is not aware of any known environmental matters related to the Property which will materially impair the transactions set forth herein or expose Buyer to any obligations or liabilities.

**(l) Bankruptcy.** Except for the Bankruptcy Case, neither Seller nor its managers/officers has filed a voluntary bankruptcy petition, suffered an involuntary petition, suffered the appointment of a receiver over substantially all of its assets, or suffered the attachment or other judicial seizure of substantially all of its assets. Seller has no management, employment, or labor union contract affecting the Property that will survive Closing or bind Buyer, and, except as disclosed in Section 27 (c), (e) and (f), none of the foregoing will materially impair the transactions set forth herein or expose Buyer to any obligations or liabilities.

**(m) Other Sale Rights.** Other than the Contract, Seller has no other effective sale agreement, right of first refusal, or option on the Property. Buyer acknowledges the Bankruptcy Court may require Seller to solicit competing bids and approve a higher or better offer, and that complying with such a court-ordered process is not a breach of this representation.

**(n) Deliveries; No Defaults.** Documents Seller provides to Buyer under the Contract are true and complete in all material respects, and Seller is not in default under them except as disclosed in Sections 27(c) and (d). Except as disclosed in Section 27 (c), (e) and (f), none of Seller's defaults will materially impair the transactions set forth herein or expose Buyer to any obligations or liabilities.

**(o) Mechanic's Liens.** As of the Closing Date, there will be no unpaid charges for the Property that could give rise to a mechanic's or materialmen's lien or for which Buyer would otherwise be responsible.

**(p) United States Person.** Seller and its managers/officers are not foreign persons subject to withholding under Section 1445 of the Internal Revenue Code.

*(q) [Intentionally Omitted.]*

As used in Section 27, "knowledge" means what Seller's managers and officers actually knew, without a duty of further inquiry.

**5. New Section 28. Seller Covenants.**

(a) At all times from the Effective Date until the Closing, Seller shall cause to be maintained in force, comprehensive general liability insurance upon the Property in amounts not less than the amounts of the insurance coverage on the Property as of the Effective Date and worker's compensation insurance with respect to its employees, if any, consistent with its current practices.

(b) At all times from the Effective Date until the Closing, Seller shall maintain the physical condition of the Property in substantially its current condition and in compliance with laws, reasonable and ordinary wear and tear excepted.

(c) Seller shall not construct or permit to be constructed any improvements or capital items to or on the Property without the prior written approval of Buyer (in its sole and absolute discretion), unless pursuant to applicable ordinance or order of court.

(d) Without the prior written consent of Buyer, which consent may be granted or withheld in Buyer's sole and absolute discretion, Seller shall not enter into any new property agreements or amend any existing property agreements (except to terminate property agreements), which in any of the foregoing circumstances would, in any way, be binding upon Buyer or the Property from and after Closing. Seller shall comply in all material respects with its obligations under the any currently existing property agreements.

(e) Without the prior written consent of Buyer, which consent may be granted or withheld in Buyer's sole and absolute discretion, Seller shall not, and shall use commercially reasonable efforts to cause Tenant not to, enter into any new lease, rental agreement, event booking, venue reservation, license to use any portion of the Property, or other occupancy agreement, or modify or amend any lease or grant any concessions to a tenant thereunder. Seller shall comply in all material respects with its obligations under the Leases.

(f) Seller shall not voluntarily sell, assign, lien, lease, license, pledge, encumber or otherwise transfer any part of the Property or any interest therein, or enter into or grant any easement, right-of-way, restriction, restrictive covenant, or other encumbrance, or plat, replat, subdivide or rezone the Property, or grant to any party any option with respect to the foregoing. Seller shall not enter into any agreement, contract, letter of intent or similar understanding for the sale of the Property, whether conditional or otherwise, while the Contract is in effect.

(g) Seller shall not take any action that Seller knows would result in a failure to comply in all material respects with all laws and governmental regulations applicable to the Property. Seller shall comply with, and cause the Property to be in compliance with, all Environmental Laws and permits issued pursuant thereto in all material respects and not cause or permit any releases of Hazardous Substances in, on, or under the Property in contravention of Environmental Laws.

(h) Seller will timely pay its operating costs, utilities, and ad valorem taxes, subject to three disclosed exceptions that do not breach this covenant: (i) the approximately $68,000.00 outstanding 2025 ad valorem taxes will be paid at Closing from sale proceeds, not before; (ii) Seller's disclosed default on the Prosperity note continues during the case, provided Seller keeps making the monthly adequate-protection payment required by the Cash Collateral Order, with the Prosperity lien paid in full at Closing; and (iii) Seller's disclosed default on the SBA loan continues, to be resolved through the Sale Order under § 363(f) as described in Section 27(c). Seller's post-petition expenditures are limited to those the Cash Collateral Order authorizes, and Seller's inability to pay other operating expenses not authorized by that order is not a breach. Except as disclosed in Section 27 (c), (e) and (f), there are no matters hereinabove which shall survive Closing or which would impair the transactions set forth in the Contract or otherwise create any obligations or liabilities for Buyer.

(i) Seller shall promptly notify Buyer in writing of: any legal actions, suits or similar proceedings served or threatened in writing against Seller (to include, without limitation its owners, directors and officers) or the Property; any written notification asserting that the Property is in violation of any laws or governmental regulation; any written notice of any pending or threatened condemnation; any written notice of any alleged violation of any Environmental Law applicable to Hazardous Substances from any governmental authority or other person with respect to the

Property; or the filing or threatened filing in writing of any mechanic's or materialman's lien or lien claim with respect to the Property.

(j) Seller shall promptly notify Buyer of any changes affecting its representations, once Seller obtains knowledge thereof.

**6. New Section 29.**

*[Intentionally Omitted — consolidated into the single Buyer-to-Seller indemnity in Section 2 and the AS-IS provision in new Section 32.]*

**7. New Section 30. Assignment.**

Notwithstanding Paragraph 22E, Buyer may assign the Contract, in whole or in part, without Seller's consent, to any entity that controls, is controlled by, or is under common control with Buyer, or in which Oscar Galvan or Donna Galvan holds a direct or indirect ownership interest, provided that Buyer delivers written notice of the assignment to Seller at or before Closing and the assignee assumes in writing all of Buyer's obligations under the Contract. No such assignment relieves Buyer of liability under the Contract unless Seller agrees otherwise in writing. Buyer may also direct that the deed and any bill of sale be taken in the name of any such affiliate.

**8. New Section 31. Bankruptcy Court Approval.**

Seller is a debtor and debtor-in-possession in that certain bankruptcy case styled In re Rooted Enterprise, LLC, Case No. 26-33356, pending under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Case" and such court, the "Bankruptcy Court"). Notwithstanding anything in the Contract to the contrary, the following provisions govern the sale of the Property and control over any conflicting provision of the Contract or this Exhibit "A":

**(a) Definitions.** "Bankruptcy Code" means title 11 of the United States Code. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure. "Sale Motion" means the motion Seller files with the Bankruptcy Court seeking entry of the Sale Order. "Sale Hearing" means the hearing on the Sale Motion. "Sale Order" means an order of the Bankruptcy Court, in form and substance reasonably acceptable to Buyer, approving the Contract and authorizing the sale of the Property to Buyer pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code. "Final Order" means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument, rehearing or new trial has expired and as to which no appeal, petition, motion or stay is then pending. "Alternative Transaction" means a sale, transfer, or other disposition of all or any material portion of the Property to any person or entity other than Buyer or Buyer's permitted assignee.

**(b) Sale Subject to Bankruptcy Court Approval.** Seller's obligation to sell is conditioned on entry of the Sale Order. Buyer hereby waives the condition that the Sale Order become a Final Order (i.e., the fourteen (14) day appeal period under Bankruptcy Rule 8002) as a condition to Closing; Buyer's obligation to buy is conditioned only on entry of the Sale Order. This waiver is given in consideration of the compressed timeline required by the Agreed Order on Continued Use of Cash Collateral [Doc. No. 49] and may not be revoked without Seller's written consent. Seller will use commercially reasonable efforts to obtain the Sale Order promptly and will not withdraw the Sale Motion without Buyer's written consent.

**(c) Sale Motion; Buyer Review Rights.** Seller will file the Sale Motion (and any necessary bid-procedures motion, if required) within ten (10) days after the Effective Date and request the

DigiSign Verified - d4b671fa-45a8-4cd7-9808-576378a4e362

earliest available Sale Hearing date. Seller will give Buyer's counsel drafts of the Sale Motion, proposed Sale Order, and any bidding procedures at least three (3) business days before filing, in a form reasonably acceptable to Buyer, and will give all required notice of the Sale Motion and Sale Hearing to creditors, lienholders, taxing authorities, and other parties in interest.

**(d) Required Terms of the Sale Order.** The Sale Order must, at minimum: (i) approve the Contract and the sale under § 363(b); (ii) sell the Property free and clear of all liens and interests under § 363(f), with such liens attaching to net proceeds in the same priority they held against the Property; (iii) find Buyer or its permitted assignee a good-faith purchaser under § 363(m), with no conduct by either party avoidable under § 363(n); (iv) find the price fair consideration and reasonably equivalent value, not avoidable under §§ 544, 547, 548, or 550 or state law; (v) find Buyer has no successor liability for any obligation of Seller or the estate; (vi) authorize Seller to execute closing documents; (vii) require pre-Closing-year ad valorem taxes paid in full at Closing from proceeds, with the Closing-year taxes prorated under Paragraph 14 and all tax liens released of record; (viii) waive the Rule 6004(h) fourteen-day stay so the order is effective on entry; and (ix) retain jurisdiction to enforce the Sale Order and the Contract. It must further (x) approve rejection of the Lease under § 365 (or confirm a separate rejection order) and require Tenant to surrender the Property in the condition required by Section 12(g) and free of any event booking, reservation, license, or other right of use; (xi) confirm prepetition rent arrears remain estate assets, not conveyed to Buyer; and (xii) provide that the SBA Lien is extinguished under § 363(f) upon Closing, attaching to net proceeds remaining after the Prosperity payoff, closing costs, commissions, and taxes, in lien-priority order, with the SBA afforded notice and an opportunity to be heard before entry.

**(e) Closing Date; Outside Date.** Notwithstanding Paragraph 10A, the Closing Date shall be the fifth (5th) business day after entry of the Sale Order, consistent with Buyer's waiver of the finality condition in Section 31(b). If the Sale Order has not been entered on or before September 25, 2026, or if the Closing has not occurred on or before October 2, 2026 (the "Outside Date"), Buyer may terminate the Contract by written notice to Seller, whereupon the entire Earnest Money, together with any independent consideration paid under Paragraph 7B, shall be immediately returned to Buyer and neither party shall have any further obligation except for those provisions that expressly survive termination. The parties acknowledge that time is of the essence with respect to the dates in this Section 31(e), and that the Outside Date is set in advance of the sale-closing deadline of October 30, 2026 imposed by the Agreed Order on Continued Use of Cash Collateral [Doc. No. 49], after which the automatic stay terminates as to Prosperity Bank and the Property regardless of the status of this Contract.

**(f) Bid Protections.** The Bankruptcy Court may require Seller to solicit higher or better offers and may approve a sale to a bidder other than Buyer. Buyer may participate in any court-directed auction. No break-up fee or other bid protection is provided to Buyer. In the event a sale other than Buyer is approved, Buyer shall immediately receive back its earnest money and any other sums advanced pursuant to the Contract.

**(g) No Obligation to Serve as Backup Bidder.** Buyer is not obligated to serve as a backup bidder, and no Buyer bid remains irrevocable after an auction concludes unless Buyer elects otherwise in writing.

**(h) Additional Termination Rights.** Buyer may also terminate and recover its Earnest Money if: (i) Seller misses the Sale Motion filing deadline in Section 31(c); (ii) the Bankruptcy Court approves a completed Alternative Transaction with another party rather than Buyer (approval of a competitive bidding process alone does not trigger this right); (iii) the case is dismissed or converted to chapter 7; (iv) a trustee or an examiner with expanded powers is appointed; (v) the Sale Order is reversed, vacated, or stayed for more than fifteen (15) days; (vi) Seller seeks to reject the Contract or takes a position inconsistent with performing it; (vii) stay relief leads to

foreclosure or otherwise impairs Seller's ability to convey the Property. Buyer acknowledges the SARE deadlines under § 362(d)(3) and that Seller will promptly notify Buyer of any threatened or actual stay-relief motion.

**(i) No Rejection; Assumption.** Seller will not seek to reject the Contract, and if it is an executory contract, will assume it under § 365 in connection with the Sale Order.

**(j) Conforming Qualification of Sections 27 and 28.** Sections 27 and 28 are qualified only as follows: (i) Sections 27(a) and (b) are conditioned on entry of the Sale Order, after which they apply without qualification; (ii) Section 27(d) is not breached by the Bankruptcy Case itself or by any disclosed claim or proceeding in it, including the Prosperity state-court action; (iii) [Intentionally Omitted — Section 27(l) now states the bankruptcy-history representation directly, and no separate qualification is needed]; and (iv) Section 27(n) is not breached by Seller's court-required marketing or solicitation of competing bids, provided Seller does not enter a binding Alternative Transaction except as the Bankruptcy Court authorizes. Otherwise, Sections 27 and 28 remain in full force and are remade as of the Closing Date.

**(k) Earnest Money.** The Earnest Money and any independent consideration shall be held by the Title Company in escrow and shall not constitute property of Seller's bankruptcy estate unless and until disbursed to Seller in accordance with the Contract. Seller shall include in the Sale Order, and if necessary shall seek a separate order providing, that the Title Company is authorized and directed to disburse the Earnest Money in accordance with the Contract without further order of the Bankruptcy Court. Seller shall not assert the automatic stay under Section 362 of the Bankruptcy Code, or otherwise object, to prevent or delay the return of the Earnest Money or any independent consideration to Buyer when Buyer is entitled to such return under the Contract.

**(l) No Successor Liability.** Buyer is acquiring the Property only and is not assuming, and shall have no liability for, any debt, claim, liability, obligation, contract, lease, employment or labor obligation, tax, environmental claim, or other obligation of Seller, Tenant, or of Seller's bankruptcy estate, or of any affiliate of Seller relating to the Property, arising from or relating to any period before Closing, whether known or unknown, contingent or liquidated, and whether asserted on a successor liability, de facto merger, continuity of enterprise, or any other theory.

**(m) Good Faith; No Collusion.** Buyer and Seller each represent to the other, and shall represent to the Bankruptcy Court, that they are not insiders or affiliates of one another, that the Contract was negotiated at arm's length and in good faith, and that neither has engaged in any conduct that would cause or permit the Contract or the sale of the Property to be avoided, or damages to be imposed, under Section 363(n) of the Bankruptcy Code.

**(n) Notice of Filings; Right to Appear.** Seller shall serve, or cause to be served, on Buyer's counsel, Patrick Murphy, Murphy & Vickers, P.C., 2525 North Loop West, Suite 250, Houston, Texas 77008, patrick@murphyslawtx.com, copies of all pleadings, notices, and orders filed in the Bankruptcy Case that relate to the Property, the Contract, or the sale contemplated by the Contract, contemporaneously with the filing thereof. Buyer and Buyer's counsel shall be entitled to appear and be heard at the Sale Hearing and at any other hearing relating to the Property or the Contract.

**(o) Conflict; Survival.** In the event of any conflict between this Section 31 and any other provision of the Contract or this Exhibit "A," this Section 31 controls. This Section 31 survives the Closing of the transaction and any expiration or termination of the Contract.

**(p) Related-Party Disclosure.** BCS Peas In A Pod Learning Center, LLC, the Tenant under the Lease to be rejected, is owned and managed by Stephanie Shoemake, who also manages Seller.

The Lease rejection and Tenant's vacation are related-party matters subject to Bankruptcy Court disclosure and review in connection with the Sale Order. Buyer has been advised of this relationship and agrees it is not a basis to void or challenge the Contract or the Sale Order.

**(q) Sufficiency of Proceeds; Prosperity Payoff Condition.** Seller's and Buyer's obligations to close are conditioned upon the Purchase Price, net of the broker's commission, ad valorem tax payments, and ordinary closing costs, being sufficient to pay in full Prosperity Bank's claim as reflected in its then-current written payoff statement, less any portion of such claim that Seller has disputed in good faith and escrowed in accordance with paragraph 4 of the Agreed Order on Continued Use of Cash Collateral [Doc. No. 49] (the "Sufficiency Condition"). This Sufficiency Condition reflects the requirement of paragraph 2.f(a) of the Agreed Order [Doc. No. 49] that any contract for sale of the Property be in an amount sufficient to pay Prosperity Bank's debt in full, including default interest, attorneys' fees, and expenses, as set forth in a written payoff provided by Prosperity Bank. Seller shall obtain an updated written payoff from Prosperity Bank not more than five (5) business days before the scheduled Closing Date and shall promptly deliver it to Buyer and to the Title Company. If the Sufficiency Condition is not satisfied, Seller shall promptly notify Buyer in writing, and the parties shall have five (5) business days to agree in writing on an increased Purchase Price sufficient to satisfy the Sufficiency Condition. If the parties do not so agree within that period, either party may terminate this Contract by written notice, whereupon the Earnest Money and any independent consideration paid under Paragraph 7B shall be immediately returned to Buyer, and neither party shall have further obligation except for provisions that expressly survive termination. If Seller has timely objected to any portion of Prosperity Bank's claim under paragraph 4 of the Agreed Order [Doc. No. 49] and such objection remains unresolved as of Closing, the disputed portion shall be excluded from the Sufficiency Condition and shall instead be escrowed by the Title Company from sale proceeds at Closing, with Prosperity Bank's lien attaching to such escrowed funds, all as contemplated by paragraph 4 of the Agreed Order [Doc. No. 49].

**9. Limitation on Damages:**

BUYER AND SELLER WAIVE THE RIGHT TO RECOVER CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES.

**10. Construction:**

THIS CONTRACT IS THE RESULT OF ARM'S LENGTH NEGOTIATION AND SHALL NOT BE INTERPRETED AGAINST THE PARTY WHICH DRAFTED THE INITIAL VERSION OF THE CONTRACT. THIS CONTRACT IS JOINTLY DRAFTED.

**11. Survival.**

The provisions of this Exhibit survive Closing, and any expiration or termination of the Contract, to the extent stated herein.

**12. Modifications to Contract Closing Obligations.**

The following Contract provisions are amended to conform to this Exhibit "A," the Lease rejection, the absence of a security deposit, and the Bankruptcy Case. This Section 12 controls over any conflicting provision of the Contract or this Exhibit "A."

**(a) Amendment to Paragraph 2B(3) — Leases, Rents, and Security Deposits.** No lease interest conveys at Closing, since the Lease will be rejected under § 365 before or at Closing. Seller will convey any unpaid postpetition rent it holds for the period from the Petition Date through Closing. No security deposit exists or conveys — the Lease required none.

**(b) Amendment to Paragraph 10C — Deed; Possession.** Seller will deliver the deed at Closing only once Tenant has vacated the Property, Tenant has delivered to Buyer a certification, in form reasonably satisfactory to Buyer, that the Venue Use described in Section 27(f) has ceased operating and that no event, booking, or reservation will be held or accepted at the Property after Closing, and the Lease has been rejected by Bankruptcy Court order, conditioned on entry of the Sale Order approving that rejection. If Tenant has not vacated by Closing, Buyer's sole remedy is to extend the Closing Date for up to ten (10) business days to allow Tenant to vacate, not to terminate the Contract, provided that no such extension shall extend the Closing Date beyond the Outside Date set forth in Section 31(e). If Tenant has not vacated by the expiration of such extension (or, if earlier, the Outside Date), Buyer's rights shall be governed by Section 31(e).

**(c) Amendment to Paragraph 10D(1) — Tax Statements.** Seller will deliver evidence at Closing that all outstanding ad valorem taxes (approximately $68,000.00 for 2025 taxes, plus penalties and interest, or such greater amount as reflected in a current tax payoff obtained from the taxing authority before Closing) have been paid in full from sale proceeds at Closing — satisfied by payment at Closing, not as a precondition to it. The title company is directed to pay those taxes from Seller's proceeds before disbursing any remainder to Seller or other lienholders.

**(d) Amendment to Paragraph 10D(3) — Assignment of Leases.** Deleted in its entirety — there is no lease to assign once the Lease is rejected under § 365. Seller will instead deliver a copy of the Bankruptcy Court's rejection order confirming Tenant's obligation to vacate.

**(e) Amendment to Paragraphs 10E(3) and 10E(4) — Buyer Closing Obligations.** Deleted in their entirety. No security deposit was required or collected (the Lease expressly required none), and the Lease will be rejected and not in effect at Closing, so Buyer has no security-deposit acknowledgment or lease-assumption obligation.

**(f) Amendment to Paragraph 14C — Rent and Security Deposits.** No security deposit exists or is tendered. Prepetition rent arrears are excluded and remain estate assets.

**(g) Clarification Regarding Paragraph 2B(7) — Personal Property Exclusions.** The refrigerators and kitchen equipment excluded under Paragraph 2B(7) belong to Tenant, not Seller, and may leave with Tenant upon vacating, but only to the extent such items are unattached, freestanding personal property that can be disconnected and removed without cutting, drilling, patching, or otherwise altering any floor, slab, wall, ceiling, roof, or building system. Any item that is physically attached to or embedded in the building or its slab, or hard-connected to the plumbing, gas, electrical, mechanical, or exhaust systems such that its removal would damage the Property (including hood systems and their ductwork and roof penetrations, walk-in coolers, built-in sinks, dishwashers, water heaters, and built-in casework), is a fixture, conveys with the Property, and shall be left in place. Buyer acquires no interest in that unattached equipment, Seller makes no warranty about it, and Tenant's removal of such unattached equipment is not damage to the Property, provided that all penetrations, disconnections, and other damage caused by removal of any equipment, whether attached or unattached, shall be repaired and made code-compliant by Seller or Tenant, at no cost to Buyer, before Closing. Seller shall cause Tenant to comply with this Section 12(g), and delivery of the Property in the condition required by this Section 12(g) is a condition to Buyer's obligation to close, to be confirmed by a Buyer walkthrough not more than three (3) business days before the Closing Date.

**(h) Clarification Regarding Paragraph 7B — Feasibility Period and Sale Motion Timing.** Because the Sale Motion (due within ten (10) days of the Effective Date under Section 31(c)) will be filed before the twenty (20)-day feasibility period ends, Buyer acknowledges the Bankruptcy Court process may begin while feasibility review is still open. If Buyer terminates

during the feasibility period, it will promptly notify Seller's counsel in writing so Seller can act accordingly in the case. Seller's Sale Motion costs incurred before such termination are not recoverable from Buyer except as the Bankruptcy Court may authorize.

**13. New Section 32. AS-IS Sale; Disclaimer.**
Except for the express representations in Section 27 of this Exhibit "A," Seller sells, and Buyer accepts, the Property AS IS, WHERE IS, WITH ALL FAULTS, without any warranty of condition, merchantability, habitability, or fitness for a particular purpose, whether express or implied. Seller provides no indemnity to Buyer with respect to the Property or the transaction, and this Exhibit "A" adds no indemnification obligation of Seller to Buyer beyond what may otherwise exist under the Contract. As a chapter 11 debtor-in-possession selling substantially all estate assets to pay creditors, Seller cannot meaningfully fund a post-closing indemnity obligation. Buyer acknowledges it has had, or will have during the feasibility period under Paragraph 7B, a full opportunity to inspect the Property and investigate its condition, and is relying solely on its own inspection and the express representations in Section 27, not on any indemnity or implied warranty. This Section 32 does not limit Buyer's remedies for a breach of the Section 27 representations that survive Closing, nor Buyer's right to terminate under Paragraph 7B or Section 31(h).

**SELLER:**

**ROOTED ENTERPRISE, LLC, a Texas limited liability company Debtor and Debtor-in-Possession**

By: Authentisign *Stephanie Shoemake* 08/15/26
Stephanie Shoemake, Manager

**BUYER:**

**OSCAR AND DONNA PROPERTIES, LLC, a Texas limited liability company**

By: *Oscar Galvan* 08/15/2026
Oscar Galvan, President